STATE v. ARCHIE McIVER.

(Decided November 28, 1899.)

*Indictment—Murder—Evidence as to Character of Deceased.*

1. Evidence of the general character of the deceased as a violent and dangerous man is admissible *where there is evidence tending to show that the killing may have been done from a principle of self-preservation;* and also where the evidence is wholly circumstantial, and the character of the transaction is in doubt. *State v. Turpin,* 77 N. C., 473, 476.

2. The prisoner having given his version of the homicide, which, if believed by the jury, strongly tended to prove self-defense, he was clearly entitled to testimony tending to show the violent character of the deceased.

INDICTMENT for the murder of J. T. Howie, tried before *Shaw, J.,* at January Term, 1899, of the Superior Court of MONTGOMERY County. The killing by shooting was admitted. No third person was present. The deceased was seen to enter the house, angry and cursing, where the prisoner was. Immediately two pistol shots were heard, and the deceased was found lying dead, with an axe by his side. The prisoner, who was a workman under the deceased, testified that Howie assaulted him with the axe, and he shot him in self-defense.

Mat Hill, a witness for the State, on cross-examination, was asked by the prisoner's counsel if Mr. Howie was not a man of vicious, bad temper, and violent when he got mad.

The question was, on objection from the State, excluded by the Court, and prisoner excepted.

The prisoner's counsel also asked this witness if Howie did not exhibit this violent and vicious temper towards another of his hands that morning, and beat him unmercifully.

Objection .by the State was sustained, and the question excluded by the Court.   Prisoner excepted.

There was a verdict of guilty of murder in the first degree. Judgment of death, and appeal by the prisoner to the Supreme Court.

*Messrs. Douglass & Simms,* for appellant.
*Attorney-General,* for State.

DOUGLAS, J.   This is an appeal on conviction for murder in the first degree.   Among other exceptions, are those to the exclusion of the following evidence:   The prisoner proposed to ask a witness for the State if the deceased was not a man of vicious temper and violent when he got angry.   On objection by the State, the question was excluded.   The prisoner also proposed to ask the witness if the deceased did not exhibit this violent and vicious temper towards another of his hands that morning, and beat him unmercifully.   This was also excluded.   In this we think there was error.   The rule, as laid down in *State v. Turpin,* 77 N. C., 473, 476, is as follows:   "Evidence of the general character of the deceased as a violent and dangerous man is admissible *where there is evidence tending to show that the killing may have been done from a principle of self-preservation,* and also where the evidence is wholly circumstantial, and the character of the transaction is in doubt."   This has been so often cited and approved as to have become a settled rule of evidence.   *State v. Byrd,* 121 N. C., 684, and cases cited therein.   The facts in the case at bar are very similar to those in Turpin's case, and even stronger, inasmuch as the threats were made directly to the prisoner.

It appears from the evidence that the deceased came to the shanty where the prisoner lived, about 6 o'clock on the morning of the homicide, and ordered the prisoner to leave. The language and manner of the deceased are thus described by Will Hill, a witness for the State: "Heard Mr. Howie (the deceased) cursing Arch (the prisoner) that morning, and all Arch said, was: 'I'm sick.' Mr. Howie cursed him for everything. Arch was in bed. Mr. Howie told him if he did not leave before morning he would land him in hell. Arch did not say he did not want any trouble. Howie did not give Arch time to get his clothes or his breakfast; told him he would kick him into hell if he did not leave." Shortly afterwards the deceased and the prisoner both left the shanty. About half past 9 o'clock, the prisoner came back to the shanty, and soon thereafter the deceased rode up in front of the shanty, and, after some altercation with the prisoner, got off his horse and entered the house. In a few minutes he was shot by the prisoner. There was no one else in the house. The prisoner admits the killing with a deadly weapon, but claims that it was done in self-defense. With regard to the killing, the prisoner testified in his own behalf as follows: "I went in the shanty. Cora said, 'yonder comes Mr. Howie.' I said, 'let me get away before he gets here to keep from having a fuss.' I was in the house waiting for Esther to bring my handkerchief. I had my coat on my arm, fixing to leave there. Mr. Howie rode up on his horse in front of the door about forty feet, and said, 'look here, old nigger, I thought you were gone.' I told him I had gone, but had to come back for my coat. He said, 'you damned nigger, think I can't break you away from that shanty.' I did not reply. He rode his horse up in front of the door, and said, 'get out of here, you damned yellow son-of-a-bitch; I'll blast you down.' He got down off his horse, and grabbed up an axe which was there

beside the door, and came into the shanty, and drew back to hit me with the axe, and I reached over on the bed and got the pistol, and shot him, before he could hit me with it. The first time I shot him, he didn't stop; he shook his head, and came right on to me, and I shot him again, and the axe dropped on the floor, and he fell forward on the axe, and put his hand back to his hip pocket. I stepped out at the door. He raised up and said, that was all, 'damn you, I'll get you.' I then went on down the road, and met Mat Hill on the bridge." The testimony of the prisoner was competent, and, if believed by the jury, strongly tended to prove self-defense. Under the circumstances, the prisoner was clearly entitled to testimony tending to show the violent character of the deceased. The principle is so fully discussed in the cases of Turpin and Byrd, *supra,* that we need not further discuss it, which we could not do, without useless repetition.

As the excluded evidence was competent, and in the highest degree material, the prisoner is entitled to a new trial. There are also some exceptions to the charge of the Court, which we think tended to the prejudice of the prisoner, but as these objections are not likely to arise upon another trial, we need not discuss them.

New trial.