Davis, J.
The defendant was indicted for murder in the second degree. Under his plea of not guilty, the defendant admitted that he fired the fatal shot but claimed that the shooting was in self-defense. The defendant himself testified that the deceased was the aggressor, that he was a man of violent and dangerous character and that it was known to him that such was the character of the deceased, the defendant, at the time of the alleged murder. He also testified that he was a witness to two manifestations of the deceased’s *307 quarrelsome and dangerous disposition. Thereafter certain witnesses for the defendant testified that they had the means of knowing the “general character” of the deceased as á violent and vicious man and that his character in that respect was bad; and these witnesses, as well' as others who did not qualify as to their knowledge of the general reputation of the deceased in that respect, were permitted, notwithstanding objections on behalf of the state, to testify to particular cases of quarrelsome and violent conduct on the part of the deceased, at none of which was the defendant present or in any way concerned therewith.
It is conceded that in cases of self-defense it is competent for the defendant to prove the violent and dangerous character of the deceased at the time of the commission of the crime, if such character was then known to him. Marts v. State, 26 Ohio St., 162. It is also conceded that one of the appropriate methods of proving the character of the deceased in respect to those traits, is by proving that such was his “general character,” at that time and in that community, using the term “general character” in the sense of general reputation. Bucklin v. State, 20 Ohio, 18, 22-24. The plain ground of these rules of evidence is, first, that proof of the vicious character of the deceased, known to the prisoner, places the jury in a position to judge whether the prisoner entertained an honest and reasonable belief in the imminence of bodily harm to himself, and, second, that general reputation, as distinguished from mere isolated rumors, is the final judgment of the public respecting the character of an individual, as his *308 traits and disposition have been repeatedly manifested through a more or less extended period of time. This view of the law is not in entire harmony with the following remarks which appear in the opinion in the Marts case, supra: “We suppose that evidence of the reputation of the deceased as being a vicious, violent, or dangerous person, could only be given after the introduction of testimony tending to show that such was in fact his character, and then only for the purpose of proving that the prisoner had notice of that character. In other words, the dangerous character of the deceased can not be proved by proof of his reputation, but notice of that character to the prisoner may be shown by proof of such reputation, in connection with proof that the prisoner had the means of knowing that reputation.” It will be observed that the question in the Marts case was whether or not the accused might be permitted to introduce evidence of the violent, vicious and dangerous character of the deceased, and 'that the mode of the proof of character was'not in question in that case, and we may add that the statement of the judge delivering the opinion of the court is clearly opposed to the weight of modern authority, and it seems to us, to reason also. See Upthegrove v. State, 37 Ohio St., 662; 1 Wigmore on Ev., Secs. 52, 63; 2 Ibid, Secs. 1608, 1609, 1610; State v. Turpin, 77 N. C., 473; State v. McIver, 125 N. C., 645; People v. Druse, 103 N. Y., 655, and cases there cited.
But the contention in behalf of the state is that general reputation as to the traits of character involved having been admitted, together with facts *309 within the defendant’s personal knowledge, the inquiry must stop there; and that it can not be extended to narration of particular acts of the deceased, which were not of the res gestae, which did not concern the prisoner and at which he was not present and of which he could háve no personal knowledge. This is exactly as we understand the law to be (see numerous cases cited in 5 Am. & Eng. Ency. Law, 875, n. 3) ; but the trial court saw the problem in another light and admitted the testimony. The theory upon which the court admitted testimony as to such particular acts does not very clearly appear; but it seems to have been based on the dictum in the Marts case', to which we have alluded. Accordingly the defendant was permitted to prove the conduct of the deceased on other occasions, as indicating his actual character; and then the defendant was allowed to show that he had heard of those instances previous to his own affray with the deceased, in order to show the state of mind under which the defendant acted.
Plausible as this theory may seem, it has, so far as we know, failed to obtain a substantial footing in any jurisdiction where justice is administered according to the principles of the common law; because, first, reputation to be available as evidence must be common or general reputation, the crystallized estimate which people in general - have formed of the individual in the community where he has lived, and reputation does not consist of mere reports or rumors which may be true or false; because, second, to prove that a man was the aggressor in one case does not necessarily *310 prove that he was the aggressor in the case. on trial; because, third, the policy of the common law is to keep close to the issue in the case on trial and not to allow the jury to be distracted in the determination of side issues, as numerous as the particular instances of conduct which may be offered in evidence; and because, fourth, while it may be presumed that the general reputation of an individual in the community where he has lived is always susceptible of proof or defense, nobody can be ready at a moment’s notice to defend against accusations relating to all the transactions of his life.
On this subject the judgments of this court have always been consistent in adhering to the rule that “character can be impeached only by evidence of general reputation and not by evidence of particular acts of misconduct. It should be what people in general say and not what others say.” Snyder v. Commonwealth, 85 Pa. St., 519. An apparent conflict exists between Dewit v. Greenfield, 5 Ohio, 225, and Duval v. Davey, 32 Ohio St., 604. In the latter case the rule stated in the former was regarded as too narrow, viz.: “In all the foregoing cases, the inquiry must be confined to the general good or bad character of the party;” but when the expression “general character” is construed in the light of what was said by the court in Bucklin v. State, ut supra, there is really no difference in the two cases.

Exceptions sustained.

Shauck, C. J., Price, Crew, Summers and Spear. IT., concur.