### STATE v. JOE RODDEY.

(Filed 7 May, 1941.)

**1. Homicide § 27f—**

Where all the evidence tends to show that when defendant shot deceased, both were inside defendant's house, a charge on the duty to retreat in case of a nonfelonious assault, even though correct in itself, constitutes prejudicial error, although the right of defendant to kill in defense of his home is given in other portions of the charge, since the duty to retreat in case of a nonfelonious assault is not applicable to the evidence.

**2. Homicide § 11—**

A man who is in his own home and who is innocent of guilt in bringing on the affray, is not required to retreat, but may stand his ground and repel the assault with such force as is necessary, even to the point of killing his adversary, regardless of the original character of the assault.

APPEAL by defendant from *Clement, J.,* at 11 November, 1940, Regular Term, of MECKLENBURG.

Criminal prosecution upon indictment charging defendant with the murder of one Ernest Brown.

The defendant entered plea of not guilty, and upon the call of the case the solicitor for the State announced in open court that State would not ask for a verdict of guilty of murder in the first degree, but would only ask for a verdict of murder in the second degree, or manslaughter, as the evidence might warrant. Whereupon counsel for defendant announced in open court that defendant would invoke the doctrine of self-defense in defending his own home.

Pertinent facts of record are these: On Sunday, 1 September, 1940, the deceased, Ernest Brown, lived on one side of Swartz's Alley in the city of Charlotte, and the defendant lived on the other side. Defendant's house consisted of front room, middle room, kitchen and back porch. On the afternoon of above date defendant complained of conduct of alleged intoxicated persons in the alley, and, in consequence, he and deceased became involved in a verbal quarrel and fist fight in the alley. They separated. Deceased was escorted to his home by his wife and another. He soon went to and sat on the porch of Mary Wallace near defendant's house. Defendant was accompanied into his house.

From this point the State offered evidence tending to show that defendant got his pistol and went to his back door, called deceased to come over and talk over their differences, and as deceased, in a peaceful manner, came to the door where defendant was, defendant renewed the quarrel, and as deceased stood inside the screen door, defendant shot him with the pistol which he had in his right hand hidden from view of those outside; and that deceased stumbled forward, straightened up and fell into the middle room, after which defendant shot him twice.

On the other hand, defendant offered evidence tending to show that he and deceased had been friends; that he expressed a desire to talk with deceased as to why he had stricken him; and that, hearing this expression, deceased came in a fighting attitude to the back porch of defendant. What followed, as contended by defendant, is described by him briefly in this manner: "I was standing in the door, and he was coming on my porch. . . . I said 'Ernest, don't come in my house.' And I commenced backing up. He rushed in after me . . . I told him to leave me alone, and I backed into the middle room to the fireplace, and when I got there, there was the pistol laying up there. I reached and got it, and he was right on me then, and he grabbed me and said, 'Oh, God damn you, I'm going to kill you.' I thought he was going to kill me, just like he said. . . . All the shots was made there in that middle room. I did not have my pistol at any time before he come into the middle

room . . . I say I shot Ernest Brown trying to protect myself after he grabbed me . . . I don't know what Ernest Brown had . . . when he grabbed me, he had one hand in back of him. He reached back . . ."

Verdict: Guilty of manslaughter.

Judgment: Confinement in common jail of Mecklenburg County for a period of two years, and to be assigned to work under the control and supervision of the State Highway & Public Works Commission.

Defendant appeals to Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State.*

*G. T. Carswell and Joe W. Ervin for defendant, appellant.*

WINBORNE, J. The court below, speaking to the subject of the right of a man to fight in self-defense, among other things, charged as follows: "Now, if an assault is made on him and is not a felonious assault, then before he can slay his assailant and do so in self-defense, the law requires that he retreat, get away if he can do so without subjecting himself to great bodily harm or death. . . . In such cases a person is required to withdraw, if he can do so, and retreat as far as is consistent with his own safety. In either case, he can only kill from necessity, but in the one he can have that necessity determined in view of the fact that he had a right to stand his ground; in the other, he must show, as one feature of the necessity, that he has retreated to the wall. That is, if it was not a felonious assault, then he is required to retreat if he can do so in safety, rather than to slay his assailant." Exception by defendant.

Defendant appropriately contends that while the doctrine of retreat enunciated in these instructions may be correctly applied to different factual situations, it does not apply to a controversy in a man's home, as in the present case. Hence, he contends that, even though the court did further instruct on the right of a man to protect his home and family, the instructions to which exception is taken are calculated to mislead the jury to his prejudice. With this contention we agree. *S. v. Bryson,* 200 N. C., 50, 156 S. E., 143, and cases cited.

Ordinarily, when a person, who is free from fault in bringing on a difficulty, is attacked in his own dwelling or home, the law imposes upon him no duty to retreat before he can justify fighting in self-defense. 26 Am. Jur., 263; Homicide, sec. 155; *S. v. Harman,* 78 N. C., 515; *S. v. Bryson, supra.* Compare *S. v. Glenn,* 198 N. C., 79, 150 S. E., 663.

The principle is expressed in the case of *S. v. Harman, supra,* in an opinion by *Reade, J.,* in this manner: "If the prisoner stood entirely on the defensive and would not have fought but for the attack, and the

attack threatened death or great bodily harm, and he killed to save himself, then it was excusable homicide, although the prisoner did not run and flee out of his house. For, being in his own house, he was not obliged to flee, but had the right to repel force with force, and to increase his force, so as not only to resist, but to overcome the assault."

Again, in *S. v. Bryson, supra, Stacy, C. J.,* speaking to the subject, said: "The defendant being in his own home and acting in defense of himself, his family and his habitation—the deceased having called him from his sleep in the middle of the night—was not required to retreat regardless of the character of the assault. *S. v. Glenn,* 198 N. C., 79, 150 S. E., 663; *S. v. Bost,* 192 N. C., 1, 133 S. E., 176. This, however, would not excuse the defendant if he employed excessive force in repelling the attack. *S. v. Robinson,* 188 N. C., 784, 125 S. E., 617."

Applying these principles, the doctrine of retreat has no place in the present case. All of the evidence tends to show that the shooting took place in the home of defendant.

As the case goes back for a new trial for cause stated, we deem it unnecessary to discuss other exceptive assignments. The matters to which they relate may not again occur.

Let there be a

New trial.