STATE v. CLING MINTON.

(Filed 8 October, 1947.)

**1. Homicide § 22—**

Ordinarily, uncommunicated threats are not admissible in homicide cases, but where defendant offers evidence of self-defense, and testimony of threats made by deceased against him shortly before the fatal occurrence tend to throw light on the occurrence and have an explanatory effect on the plea of self-defense, such uncommunicated threats are competent and the exclusion of testimony thereof is reversible error.

**2. Homicide § 27f—**

Defendant's evidence tended to show an assault made upon him at his place of business operated in his residence. *Held:* An instruction on the right of self-defense predicated solely upon a felonious assault and omitting to charge upon defendant's right to stand his ground in the case of a nonfelonious assault, is reversible error.

**·3. Homicide §§ 19, 27b—**

Testimony by defendant that he shot deceased does not support an instruction that there was an admission that defendant killed deceased with a deadly weapon.

DEFENDANT's appeal from *Sink, J.,* at March Term, 1947, of WILKES.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Trivette, Holshouser & Mitchell and T. R. Bryan, and Wm. H. McElwee for defendant, appellant.*

SEAWELL, J. The defendant, Cling Minton, was tried on an indictment charging him with the murder of Atwell Parsons, was convicted of manslaughter and from a sentence of 12 to 15 years in State's Prison appealed to this Court, assigning some 80 items of error on the trial, only a few of which it is found necessary to discuss.

The defendant's place of business, where the shooting took place, included a skating rink, a couple of slot machines and a beer counter. The upstairs was used as a residence. The State's evidence is briefly to the effect that at the time of the killing everything was peaceful, and suggests little or no motive for the shooting. Parsons, it was said, was standing about six feet in front of Minton, the defendant, unarmed, with his arms hanging down when defendant shot him in the belly. He died of this wound shortly afterward in the hospital.

The defendant's testimony, however, tended to show that it was after 12 o'clock and Mrs. Minton had asked all those in the store to leave so that they might close up for the night because her baby was sick up-

stairs. Defendant's evidence also tends to show that the defendant made a like request, and repeated it, which request was presently unheeded.

Claude Minton testified that he and Carroll Lowe entered the place after June Ferguson, Atwell Parsons, Roland Walsh, Raymond Parsons, Fred Bumgarner, and Johnny Land had already gotten there. Minton told his assistant, Dock Parsons, to sell no more beer. Mrs. Minton came back into the store room and said, "You all go ahead, we have got to close up." "Atwell Parsons, the deceased, spoke up and said, 'By G——, he was not going no place until he had another round of beers apiece.'" Witness got up and motioned to the Lowe boy to go. "I started, got to the end of the counter. Johnny Land run over and grabbed me and commenced hitting me in the head . . . knocking me backwards, I was walking backward to keep the licks off me. Roland Walsh, he run in, said, 'G—— damn him, let me get hold of him.'" They were knocking and dragging the witness Minton, had him on his knees when he heard the shot fired. Of the defendant, witness stated: "He (meaning Min-. ton) told him to leave, told them twice that I know of."

Carroll Lowe, who had accompanied Claude Minton to the place, testified that when Mrs. Minton spoke of the sick child, Cling Minton said, "Boys, drink your beer, we have got to close up." Claude got up and started putting on his coat; walked by the stove and Johnny Land jumped up and hit him, Roland Walsh joining in the fight. Atwell Parsons came out of the booth by jumping over the top and ran at Cling Minton,—"Made a dive for him with hands extended." He heard Atwell say, "S. O. B." about the time he hit the floor and ran at Cling. He ran up in about two feet of Minton while the latter was backing up. Minton then shot Atwell. Atwell had run from the rear to the front, about 20 feet, toward Minton.

Mrs. Minton testified that when Claude Minton started to leave Johnny Land sprang upon him, followed by Roland Walsh, and both were hitting and dragging him, beating him almost down to his knees. Atwell Parsons sprang out of his booth, lunging toward Minton and saying, "G—— damn you." Minton went backing away and Parsons continued to advance upon him, cursing him until Minton had got into the corner when the pistol shot was fired.

The defendant testified, amongst other things that when the fight upon Claude Minton got under way Atwell Parsons, the deceased, was coming at him out of the booth and that he (Minton) backed up. Parsons said, "You G—— damn s. o. b., I've got what it takes for you." And when he fired the shot the gun barrel was right up against Parsons. "My gun was lying there at the cash register on the counter. I was backing up into the corner of the counter and the wall." "He had come out of the booth 'on his muscles,' bounced over the top of the table onto the front,

and came rushing." "I shot the deceased to keep him from killing me." The defendant testified that when he shot Parsons the latter was within two feet of him.

In this situation the defendant contends that the trial judge committed two errors, both prejudicial to consideration by the jury of his right of self-defense: The exclusion of recent uncommunicated threats which, if submitted, would have strengthened his plea by giving an objective corroboration of his peril, and his testimony relating thereto; and failure to charge clearly the law of self-defense in the case of non-felonious assault on a person in his own home or on his own premises.

The appellant contends that the outwardly crazy and motiveless occurrences of the fatal hour had a motivation which, if the excluded evidence had been admitted, would have brought them into the perspective and relation incident to reason and planning, however sinister the pattern.

The excluded evidence was substantially that Atwell Parsons, the deceased, and Raymond Parsons, Roland Walsh, June Ferguson and Johnny Land (compare this with the list of State witnesses), were just outside the door of Cling Minton's place. The witness Triplett heard Atwell Parsons say, "Let's go in and get Cling Minton and kill the G—— damn s. o. b." In about "a minute" Atwell Parsons, Raymond Parsons, Roland Walsh, June Ferguson, and Johnny Land all went in; and the shooting occurred some time later.

Generally speaking, uncommunicated threats are not admissible in homicide cases. See Stansbury, North Carolina Evidence, Sec. 162, p. 342. But there are exceptions to the rule which must be considered in the light of the facts of the particular case. Such exceptions occur where the evidence has an explanatory bearing on the plea of self-defense. The statement of the rule in *S. v. Baldwin,* 155 N. C., 494, 495, 71 S. E., 212, is as specific as the nature of the case admits, and omitting matter not relevant to the present situation, is applicable here: "It is now generally recognized that in trials for homicide uncommunicated threats are admissible . . . where they tend to throw light on the occurrence and aid the jury to a correct interpretation of the same, and there is testimony *ultra* sufficient to carry the case to the jury tending to show that the killing may have been done from a principle of self-preservation," citing *Turpin's case,* 77 N. C., 473; *S. v. McIver,* 125 N. C., 645, 34 S. E., 439; Hornigan & Thompson Self-defense, 927; *Stokes' case,* 53 N. Y.; *Holler v. State,* Ind., 57; *Cornelius v. Commonwealth,* 54 Ky., 539.

Under the circumstances of this case the exclusion of the evidence was error.

In his charge to the jury on the matter of self-defense, His Honor, amongst other things, instructed them: "One feloniously assaulted, how-

ever, on his own premises may stand his ground and not retreat and may order therefrom another for any reason he may deem necessary." The appellant excepts to this charge because in effect it instructs the jury that although the defendant was in his own home he was under the duty to retreat although the assault was not felonious; *S. v. Roddey,* 219 N. C., 532, 14 S. E. (2d), 526; *S. v. Bryson,* 200 N. C., 50, 156 S. E., 143. The instruction did not fully present defendant's right of self-defense when assaulted in his own home and must, therefore, be held for error.

Also, basing his instructions upon the argument of counsel and the testimony of the defendant as to the shooting, the trial court assumed that there was an admission as to the killing with a deadly weapon notwithstanding the fact that it was merely a matter of evidence. *S. v. Ellison,* 226 N. C., 628; *S. v. Baker,* 222 N. C., 428, 23 S. E. (2d), 340; *S. v. Anderson,* 222 N. C., 148, 22 S. E. (2d), 271; *S. v. DeGraffenreid,* 223 N. C., 461, 27 S. E. (2d), 130; *S. v. Redman,* 217 N. C., 483, 8 S. E. (2d), 623; *S. v. Gregory,* 203 N. C., 528, 166 S. E., 387.

The more recent case of *Ellison, supra,* deals particularly with this matter and we think the charge is in violation of the principles there set down.

For the errors indicated, the defendant is entitled to a new trial and it is so ordered.

Error: New trial.