STATE v. HARVEY GRANT.

(Filed 25 February, 1948.)

**Homicide §§ 11, 27f—**

A person who is the victim of an unprovoked assault while on his own premises is not required to retreat before he can justify fighting in self-defense regardless of whether the assault is felonious or not, and an instruction which predicates his right of self-defense upon a felonious assault being made upon him or, in the event of a non-felonious assault, his duty to retreat to the wall, must be held for prejudicial error.

APPEAL by defendant from *Alley, J.,* at October-November Term, 1947, of SWAIN.

Criminal prosecution upon indictment charging defendant with the murder of one Roy Woods.

When the case was called for trial the solicitor announced that the State would not ask for a verdict of murder in the first degree, but would ask for a verdict of murder in the second degree, or manslaughter, as the facts may warrant.

The defendant entered a plea of not guilty, and, on the trial in Superior Court, relied upon the principle of self-defense.

The evidence offered by the State, as shown by the record on this appeal, tends to show, briefly stated, this factual situation: Roy Woods came to his death on the afternoon of 9 September, 1946, as the result of a wound in his forehead inflicted by a gun in the hands of defendant at the store of defendant in Swain County, North Carolina. At the time of the homicide the building in which defendant operated a store was located, and fronted on the right side of, and about twenty-five feet from the highway, going west, at a point just east of the bridge over Nantahala River. The building, a one-room structure, was sixteen feet in width by about twenty feet in length. In the front of the building there were (1) a door,—three feet in width, in the center, and (2) a window on each side of the door. The door was about twenty inches from the window on the right, and about six and a half feet from the right-hand corner of the building. The bottoms of the windows were about four and a half feet from the ground. There were no other doors or windows in the building.

The only persons present at the time were Enoch Brendle, the defendant, and Roy Woods. Brendle testified as a witness for the State, and defendant testified in his own behalf.

The evidence for the State and for the defendant is in substantial accord up to the instant of the shooting. It tends to show that on the afternoon of 9 September, 1946, Roy Woods came to the store of defendant; that at that time defendant was sitting on a box in the door and Brendle was sitting on the ground to one side of the door; that Woods sat down on the ground on the other side; that the three of them sat in these positions and talked for about twenty minutes; that then Woods accosted defendant about a quarrel he had had with members of Woods' family the day before, and threatened to stomp him; that, though defendant begged Woods not to hurt him, saying he was not able to fight him, Woods pulled him out of the door, and crossed and twisted his arms, pulling and squeezing him, and slung him back into the door; that defendant "just hit the door with his hand," as Brendle says, and "hitting on his hands and knees" as defendant says, and went in behind the counter, with Woods pursuing him, and two shots followed,—according to the State's evidence,—one as Woods was running out of the store and the other as Woods was at the right-hand window after having run to the right-hand front corner and turned back two steps; but as defendant says, "I reached up and got my gun and fired a shot and Woods went out of the door, and he made a turn and there was another shot fired, and everything seemed to go kind of blank until I came to the door and Woods was laying on the ground . . . I fired the shot because he made those threats, and I wasn't able to fight him and I was afraid he would kill me. My health was bad. My physical condition is bad. I have arthritis, and I have silicosis of the lungs, that is a type of tuberculosis. I weigh 127 . . . I have practically no use of my arms and shoulders . . . My right arm is in the worse condition. I can't raise it to my mouth . . . I shot to stop him . . . I was defending my own life . . . He made a turn and was coming back toward the building when the second shot was fired." The evidence further tends to show that Woods weighed 150 to 160 pounds; that defendant and Woods were brothers-in-law, and that defendant held no ill-will toward Woods.

Verdict: Guilty of manslaughter.

Judgment: Imprisonment in the State's Prison for a term of three (3) years and assigned to do labor under the supervision of the State Highway and Public Works Commission, etc.

Defendant appeals therefrom to Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Edwards & Leatherwood for defendant, appellant.*

WINBORNE, J. Defendant challenges on this appeal the appropriateness and correctness of the instructions given to the jury by the trial

judge as to the law of self-defense upon the facts of this case. It is pointed out that the right of self-defense interposed by plea of the defendant, and upon which he relies as justification of his act in shooting Roy Woods, is made to depend upon the establishment by the defendant to the satisfaction of the jury, among other legal requisites, that at the time of firing the fatal shot Roy Woods was making a felonious assault upon him; and that, if at the time the fatal shot was fired Roy Woods were making a nonfelonious assault upon defendant, defendant had retreated to the wall, within the meaning of the law.

While it is conceded that the theory of the charge as given may be entirely correct when applied to a different set of facts, defendant points out and contends that it is inapplicable to a case, such as the present one, where the party assaulted is at the time in his own place of business. The point is well made, and is supported by the uniform decisions of this Court. Here the evidence shows that the defendant was in his own place of business at the time the fatal shot was fired.

Ordinarily, when a person, who is free from fault in bringing on a difficulty, is attacked in his own dwelling or home or place of business or on his own premises, the law imposes upon him no duty to retreat before he can justify fighting in self-defense,—regardless of the character of the assault. *S. v. Harman,* 78 N. C., 515; *S. v. Bost,* 192 N. C., 1, 133 S. E., 176; *S. v. Glenn,* 198 N. C., 79, 150 S. E., 663; *S. v. Bryson,* 200 N. C., 50, 156 S. E., 143; *S. v. Roddey,* 219 N. C., 532, 14 S. E. (2d), 526; *S. v. Anderson,* 222 N. C., 148, 22 S. E. (2d), 271; *S. v. Pennell,* 224 N. C., 622, 31 S. E. (2d), 857; *S. v. Minton, ante,* 15, 44 S. E. (2d), 346, and numerous other cases. See also *S. v. Spruill,* 225 N. C., 356, 34 S. E. (2d), 142, where the cases on the subject are assembled.

The principle is expressed in *S. v. Harman, supra,* in opinion by *Reade, J.,* in this manner: "If prisoner stood entirely on defensive and would not have fought but for the attack, and the attack threatened death or great bodily harm, and he killed to save himself, then it was excusable homicide, although the prisoner did not run, or flee out of his house. For, being in his own house, he was not obliged to flee, and had the right to repel force with force and to increase his force so as not only to resist but to overcome the assault."

Again, in *S. v. Bryson, supra, Stacy, C. J.,* speaking to the subject, said: "The defendant being in his own home and acting in defense of himself, his family and his habitation . . . was not required to retreat, regardless of the character of the assault," citing *S. v. Glenn, supra,* and *S. v. Bost, supra.*

And in *S. v. Pennell, supra,* the principle is restated by *Barnhill, J.:* "Defendant was in his own place of business. If an unprovoked attack was made upon him and he only fought in self-defense, he was not required to retreat, regardless of the nature of the assault."

Applying these principles, the doctrine of retreat has no place in the present case, and it is immaterial whether the assault was felonious or nonfelonious.

It must be observed, however, that this principle does not relieve the defendant of burden of satisfying the jury as to the essential elements of principle of law as to the right of self-defense available to one assaulted in his own place of business.

The error pointed out is prejudicial to. the defendant, and on account thereof he is entitled to a

New trial.