STATE v. RALPH J. PENNELL.

(Filed 29 March, 1950.)

1. Homicide § 11—

　　A person who is in his own home when an unprovoked assault is made upon him is not required to retreat, regardless of the nature of the assault, but is entitled to fight in his own defense.

**2. Homicide § 16—**

The burden is upon defendant to prove to the satisfaction of the jury the predicate facts of self-defense when relied on by him.

APPEAL by defendant from *Rudisill, J.,* at November-December Term, 1949, of CALDWELL.

Criminal prosecution upon indictment charging defendant with the murder of one Clarence Russell.

Defendant, upon arraignment, entered a plea of not guilty.

Thereupon, the Solicitor, in open court, stated that in the trial the State would not ask for a verdict of murder in the first degree, but only for a verdict of murder in the second degree, or manslaughter, as the facts might warrant.

Upon the trial in Superior Court the State offered evidence tending to show this narrative: The homicide charged against defendant took place near midnight on 26 October, 1949, at and in the home of defendant. At the time the deceased, Clarence Russell, and another man, one Robert Horton, and the defendant had been and were drinking, and there was no unpleasantness between them. But the defendant left the others and went into his bedroom, and first called Robert Horton to "Come here a minute, Rob"; but upon Horton appearing at the door, defendant said "Back up," and Horton heard a click, and admonished defendant "Don't do that." Defendant said again "Back up." Then defendant called: "Clarence, you come here." Whereupon, Horton said: "Clarence don't you go," and asked defendant if he were mad, to which defendant replied "No." Then a gun fired, and Clarence Russell was shot, and died therefrom about 28 hours thereafter. The deceased was about 6 feet tall, and weighed well over 200 pounds.

On the other hand, defendant, testifying as witness, narrated the occurrence in this manner: Defendant and Robert Horton had worked together during the day, and had come to defendant's home to get supper. While defendant was "building a fire in the stove," Clarence Russell, the deceased, who was 39 years of age, came there. He, Clarence, had a bottle of liquor. The three of them drank some of it . . . drank it empty. Then they went down town in Clarence's "pick-up." Some argument arose about "getting out of gas." Defendant said he was going back,— whereupon Clarence ordered him to get back in the car, and he did. After visiting a filling station, and going by a girl's house, the three returned to defendant's home. Clarence asked for a potato, and defendant gave it to him. Horton asked for an onion, and defendant gave him one. "Just a little bit, not long" after that Clarence said, "Where is my liquor at?" Defendant replied, "It looks like we drank it all up." Then defendant testified: "He kicked me in the side, and jerked out his knife

and I ran back from the middle of the dining room back into my bed-room, as far as I could go, and Clarence was right after me with his knife, and I said 'What is the matter, Clarence? Are you mad at me?' I told him I was not mad at him . . . and he kept on coming, and I picked up the rifle . . . at the head of my bed where I keep it . . . Clarence said I had taken his liquor. I had not taken any, but I had helped drink it . . . I shot because I was scared he was coming on me with that knife, and I was scared."

Also the testimony of defendant is that he has "nerve trouble." He is a "veteran of World War I," and has "permanent partial disability."

And on cross-examination, defendant reiterates his version of the occurrence, and says that Clarence was striking at him with his knife.

Verdict: Guilty of murder in the second degree.

Judgment: Confinement in the State Prison at Raleigh at hard labor, or such labor as he is capable of performing, for a period of not less than fifteen years nor more than eighteen years.

Defendant appeals therefrom to Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*Max C. Wilson, G. W. Klutz, and Hal B. Adams for defendant, appellant.*

WINBORNE, J.   While defendant presents on this appeal many assignments of error based upon exceptions, taken during the course of the trial below, to rulings of the court in respect of admission and exclusion of evidence, and motions to nonsuit, and to the charge of the court to the jury, and to failure of the court to charge in certain aspects, it is deemed necessary to treat of only four of them, Nos. 21, 23, 25 and 28, that point out error which entitles defendant to a new trial. See *S. v. Grant,* 228 N.C. 522, 46 S.E. 2d 318, and cases cited.

The first three of the above numbered assignments of error relate to exceptions to portions of the charge as given, and the last relates to exception to the failure of the court to charge on the law of self-defense invoked by the plea of defendant upon the facts of the case as he contends them to be. It is pointed out by defendant that, in the charge to which the above exceptions relate, his right to self-defense, and upon which he relies as justification of his act in shooting Clarence Russell, is made to depend upon the establishment by defendant to the satisfaction of the jury, among other legal requisites, of facts which would bring him within the doctrine of retreat at the time the fatal shot was fired.

While it is conceded that the charge as given might be applicable to a different factual situation, it is rightly contended that it is inapplicable

to a case where the party assaulted is at the time in his own home. In the present case all the evidence, that of the State as well as that of defendant, shows that the homicide occurred in the home of the defendant.

Ordinarily, when a person, who is free from fault in bringing on a difficulty, is attacked in his own dwelling, or home, or place of business, or on his own premises, the law imposes upon him no duty to retreat before he can justify his fighting in self-defense,—regardless of the character of the assault. *S. v. Harman,* 78 N.C. 515. *S. v. Bost,* 192 N.C. 1, 133 S.E. 176; *S. v. Glenn,* 198 N.C. 79, 150 S.E. 663; *S. v. Bryson,* 200 N.C. 50, 156 S.E. 143; *S. v. Roddey,* 219 N.C. 532, 14 S.E. 2d 526; *S. v. Anderson,* 222 N.C. 148, 22 S.E. 2d 271; *S. v. Pennell,* 224 N.C. 622, 31 S.E. 2d 857; *S. v. Minton,* 228 N.C. 15, 44 S.E. 2d 346; *S. v. Grant, supra,* and numerous other cases. See also *S. v. Spruill,* 225 N.C. 356, 34 S.E. 2d 142, where the cases on the subject are assembled.

The principle is expressed in *S. v. Harman, supra,* in opinion by *Reade, J.,* in this manner: "If prisoner stood entirely on defensive and would not have fought but for the attack, and the attack threatened death or great bodily harm, and he killed to save himself, then it was excusable homicide, although the prisoner did not run or flee out of his house. For, being in his own house, he was not obliged to flee, and had the right to repel force with force and to increase his force so as not only to resist but to overcome the assault."

Again in *S. v. Bryson, supra, Stacy, C. J.,* speaking to the subject, said: "The defendant being in his own home and acting in defense of himself, his family and his habitation . . . was not required to retreat, regardless of the character of the assault," citing *S. v. Glenn, supra,* and *S. v. Bost, supra.*

And in *S. v. Pennell, supra,* the principle is restated by *Barnhill, J.:* "Defendant was in his own place of business. If an unprovoked attack was made upon him and he only fought in self-defense, he was not required to retreat, regardless of the nature of the assault."

Applying the principle enunciated in these decisions, the doctrine of retreat has no place in the present case, and it is immaterial whether the assault be felonious or nonfelonious.

But as the decisions of this Court uniformly hold, this principle does not relieve the defendant of the burden of satisfying the jury as to the essential elements of the principle of law as to the right of self-defense available to one assaulted in his own home.

We do not intimate any opinion on the facts. What they are is a matter for the jury.

Other assignments of error relate to matters which may not recur upon another trial.

The error pointed out is prejudicial to the defendant, and on account of it, he is entitled to a

New trial.