## STATE v. FRED WALKER.

(Filed 6 January, 1953.)

**1. Homicide § 25—**

The evidence taken in the light most favorable to the State *is held* sufficient to take the case to the jury on the charge of defendant's guilt of murder in the first degree.

**2. Homicide § 27f—**

Where defendant's evidence affords sufficient predicate, the court should charge on his right while on his own premises to fight in his own defense in the face of an unprovoked assault without retreating, regardless of the character of the assault upon him, and in such case an instruction that he had a right to stand his ground only in case the assault upon him was felonious must be held for error.

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Crisp, Special Judge,* at August Term, 1952, of WILKES.

Criminal prosecution upon a bill of indictment charging defendant with crime of murder in the first degree of one Conrad Hayes.

The defendant for his plea says that he is not guilty.

The evidence offered by the State tends to show the following:

The homicide here involved occurred around midnight of Saturday, 28 June, 1952. The scene of it was a very small old country road, sort of worn down in the middle, not over a half mile off the main highway #421 in the Miller Creek section of Wilkes County. This road was about nine feet wide with banks on each side a foot to eighteen inches high. There were three houses in a row on the east side of this road. First, the Claus Hayes house, referred to as the Hayes house, where the father and mother of the deceased Conrad Hayes lived, and where he stayed. The next, where the defendant Fred Walker and his wife and children lived, referred to as the Walker house. It was located, as variously estimated, 225 feet to 100 or 200 yards further down the road from the Hayes house. And the third, where Lonnie Ashley and his wife and children lived, referred to as the Ashley house. It was located about 75 feet or 25 yards further down the road.

Path: There was a path leading from, and directly in front of the porch of the Walker house, straight out through the yard to the road—a distance variously estimated at 15 to 25 yards.

The Walker yard: There was a yard in front of the Walker house—both north and south.

Chip block: Coming out of the Walker house, to the left of the path, there was a chip block or stump out near the corner of the yard, right next to the road.

Weeds: On the left side of the yard facing the road, there was a field of some kind, a potato patch, where there were weeds variously estimated to have been from knee,—to waist high. These weeds were on the side of the yard right close to the chip block.

The body: The body of deceased was found in the road, about 5 or 6 feet above the chip block toward the Hayes house, as expressed by one witness; about 20 feet from where. the path turned in to the Walker house, by another; about 200 yards from the Hayes house, in opinion of another; about 75 feet from, and south of the Walker house,—south part of the yard in opinion of another. The body was lying with feet to the east, and in the center of the road, and the head on the west bank. The body was kind of turned over just a little on the right side. A single barrel loaded shotgun was about or under his feet.

The State also offered evidence bearing upon the circumstances under which Conrad Hayes came to his death.

And the State further offered declarations of defendant tending to show that he admitted that he shot Conrad Hayes, but that he did so while on his own premises and in self-defense when Hayes had returned to, and was entering defendant's premises, with loaded shotgun in hand, after he, Hayes, had threatened to go home and get his gun and to come back and shoot defendant, and after defendant had later heard him say he "would go down there and kill every one of them."

At the close of evidence offered by the State, defendant demurred thereto as to the charge of murder in the first degree, and as to murder in the second degree, and as to manslaughter. The motion as to murder in the first degree was granted. "The motion as to murder in the second degree, or manslaughter is overruled," and the defendant excepts.

Verdict: Guilty of manslaughter.

Judgment: Confinement in State's Prison for a term of not less than 7 nor more than 10 years.

Defendant appeals therefrom to Supreme Court and assigns error.

*Attorney-General McMullan, Assistant Attorney-General Moody, and Charles G. Powell, Member of Staff, for the State.*

*Trivette, Holshouser & Mitchell and W. H. McElwee, Jr., for defendant, appellant.*

WINBORNE, J. While defendant presents many assignments of error on this appeal, only those based (1) upon exceptions to denial of his motion for judgment as of nonsuit as to the charges on which the court submitted the case to the jury, and (2) upon a group of exceptions to various portions of the charge pertaining to defendant's plea of self-defense, need express consideration.

As to the first, it is sufficient to say that the evidence, without reciting it, taken in the light most favorable to the State is sufficient to take the case to the jury.

But, as to the second, it appears that the court made the right of self-defense available to defendant upon the jury finding that assault was made upon him with felonious intent. These exceptions are well taken.

While it may be conceded that the charge as given in this respect might be applicable to a different factual situation, it is rightly contended that it is inapplicable to a case where the party assaulted is at the time on his own premises. The decisions of this Court uniformly so hold.

Ordinarily, when a person, who is free from fault in bringing on a difficulty, is attacked in his own dwelling, or home, or place of business, or on his own premises, the law imposes upon him no duty to retreat before he can justify his fighting in self-defense,—regardless of the character of the assault. *S. v. Harman,* 78 N.C. 515; *S. v. Bost,* 192 N.C. 1, 133 S.E. 176; *S. v. Glenn,* 198 N.C. 79, 150 S.E. 663; *S. v. Bryson,* 200 N.C. 50, 156 S.E. 143; *S. v. Roddey,* 219 N.C. 532, 14 S.E. 2d 526; *S. v. Anderson,* 222 N.C. 148, 22 S.E. 2d 271; *S. v. Pennell,* 224 N.C. 622, 31 S.E. 2d 857; *S. v. Minton,* 228 N.C. 15, 44 S.E. 2d 346; *S. v. Grant,* 228 N.C. 522, 46 S.E. 2d 318; *S. v. Pennell,* 231 N.C. 651, 58 S.E. 2d 341, and numerous other cases. See also *S. v. Spruill,* 225 N.C. 356, 34 S.E. 2d 142, where the cases on the subject are assembled.

The principle is expressed in *S. v. Harman, supra,* in opinion by *Reade, J.,* in this manner: "If prisoner stood entirely on defensive and would not have fought but for the attack, and the attack threatened death or great bodily harm, and he killed to save himself, then it was excusable homicide, although the prisoner did not run or flee out of his house. For, being in his own house, he was not obliged to flee, and had the right to repel force with force and to increase his force so as not only to resist but to overcome the assault."

Again in *S. v. Bryson, supra, Stacy, C. J.,* speaking to the subject, said: "The defendant being in his own home and acting in defense of himself, his family and his habitation . . . was not required to retreat, regardless of the character of the assault," citing *S. v. Glenn, supra,* and *S. v. Bost, supra.*

And in *S. v. Pennell, supra,* the principle is restated by *Barnhill, J.,* "Defendant was in his own place of business. If an unprovoked attack was made upon him and he only fought in self-defense, he was not required to retreat, regardless of the nature of the assault."

Applying the principle enunciated in these decisions, the doctrine of retreat has no place in the present case, and it is immaterial whether the assault be felonious or nonfelonious.

But as the decisions of this Court uniformly hold, this principle does not relieve the defendant of the burden of satisfying the jury as to the essential elements of the principle of law as to the right of self-defense available to one assaulted on his own premises.

We do not intimate any opinion on the facts. What they are is a matter for the jury.

Other assignments of error relate to matters which may not recur upon another trial.

The error pointed out is prejudicial to the defendant, and on account of it, he is entitled to a

New trial.

PARKER, J., took no part in the consideration or decision of this case.