STATE OF NORTH CAROLINA v. JOSEPH LINTON HURDLE
No. 691SC366

(Filed 13 August 1969)

**Homicide § 19— evidence competent on self-defense — uncommunicated threats to defendant**

   Where defendant offered evidence that he killed deceased in self-defense, it was error to exclude evidence of deceased's threats to the physical safety of defendant, even though uncommunicated to defendant, since the evidence tended to throw light on the occurrence and aid the jury to a correct interpretation thereof.

APPEAL by defendant from *Parker, (Joseph W.) J.,* 3 March 1969 Session, CURRITUCK Superior Court.

Defendant was charged in a bill of indictment with the first degree murder of Tulley Leo Banks. After defendant pleaded not guilty the solicitor announced in open court that he would not ask for a conviction of first degree murder but would seek a verdict of guilty of murder in the second degree, or manslaughter, as the evidence may justify.

The State's evidence tended to show the following. On the day in question one Otis Stone operated a combination filling station and grocery store which was situated on Highway 168, between Moyock and Sligo, in the northern section of Currituck County. Mrs. Ruth Banks, wife of Tulley Leo Banks, was an employee of Otis Stone, and worked in his store. Defendant, as a part of his farming operations, cultivated the lands lying to the rear of the Otis Stone store and filling station. On the day in question the State's witness Bobby Meiggs went to Otis Stone's store at about 12:15 p.m. to get something for lunch. When Meiggs arrived the deceased, Tulley Leo Banks, was already inside the store eating lunch; Banks'

truck was parked near a front corner of the store. Shortly after
Meiggs arrived, and while he was still eating his lunch, the defend-
ant drove up in his automobile alone and stopped in front of the
store. Defendant was parked with the driver's side away from the
store, and did not get out of his automobile. When Leo Banks saw
defendant parked in front of the store he walked out of the store a
little over half way to defendant's automobile; and signaled to de-
fendant by pointing with his finger in a direction towards Moyock
and away from the store premises. Defendant slid a little way to-
wards the center of the front seat of his car, looking at Leo Banks.
Banks went back into the store, went around behind the counter,
picked up a rifle, and started towards the front door again. Mrs.
Ruth Banks stood between her husband and the front door to pre-
vent him from going out with the rifle, and the witness Bobby Meiggs
took the rifle from Leo Banks' hands. Banks then sat down inside
the store for a while talking to Meiggs before deciding to get in his
truck and go back to work. Banks then went out the front door,
walked six or seven steps towards his truck, and then turned towards
defendant's automobile. Banks walked around the front of defend-
ant's automobile and up to the window on the driver's side where he
engaged in conversation with the defendant. After about a minute
or a minute and a half, defendant shot Banks through the open win-
dow of the automobile. Banks staggered towards the hood of the
car and fell to the ground in front of the car. Defendant then backed
his car up and drove off in the direction of Moyock.

The State's evidence further tended to show that Tulley Leo
Banks was dead on arrival at the hospital. The body was examined
by a surgeon and a bullet was removed from the first lumbar verte-
bra. The path of the bullet was from entry at the lower end of the
breast bone, traveling through the large blood vessels which go to
the stomach, through the liver, through the artery leading from the
heart to the kidneys and lower extremeties, and lodging in the lum-
bar vertebra. Tulley Leo Banks bled to death internally from the
damage caused by the bullet.

Defendant offered evidence which tended to show the following.
Defendant is sixty-four years of age and engages in farming. On the
day in question he had men gathering and hauling hay. At about
12:30 p.m. he drove to Otis Stone's store on Highway 168 to take a
lunch bucket to one of his workmen. When he arrived in front of
Stone's store he parked to wait for his workman to show up. The
window on the driver's side of his car, which was towards the high-
way, was about halfway down; and the window on the passenger

side, which was towards the store, was completely closed. While defendant was sitting in his car Leo Banks came out of the store waving his arms and saying something, but defendant could not understand what he said. Banks went back in the store, but a few minutes later came out waving his arms, saying something, and came towards defendant's car. As Banks came around to the driver's side of defendant's car, defendant slipped over a little towards the center of the seat. Banks reached through the partially opened window and said "You s.o.b., I am going to drag you out of that car and kill you." He said "I know you've got a gun but you aint got nerve enough to use it." Defendant picked up his pistol which was lying on the seat beside him, slipped further over towards the passenger side, and told Leo Banks not to open the door. Banks opened the door, leaned into the car, and defendant shot him. Banks staggered backwards to the front of the car where he fell. Defendant said he shot Leo Banks "to keep him from killing me."

From a verdict of guilty of manslaughter and an active sentence of not less than eight nor more than twelve years, defendant appealed.

*Robert Morgan, Attorney General, by Millard R. Rich, Jr., Assistant Attorney General, for the State.*

*Gerald F. White and John T. Chaffin for the defendant.*

Brock, J.

Defendant relied upon the principle that he acted in self-defense and assigns as error that the trial judge excluded from evidence certain statements made by Tulley Leo Banks before he went up to defendant's car, and which statements the defendant did not hear.

Lillian Sawyer, daughter of Tulley Leo Banks, testified as a witness for defendant. On direct examination she testified that shortly after defendant parked in front of the Otis Stone store, her father (Leo Banks) "burst out the store;" "he was cursing," "throwing his hands up." Then she was asked: "What did he say?" Objection to this question was sustained, but, if the witness had been permitted to answer, she would have answered: "He said, 'you common s.o.b., get the hell off the road, I mean leave here now. You are not fit to live here, or stay here.'"

Such menacing gestures and words can only be considered as threats to the physical safety of defendant. And, though they were not communicated to defendant, they tend to show that deceased was the aggressor in support of defendant's plea of self-defense.

The opinion in *State v. Minton,* 228 N.C. 15, 44 S.E. 2d 346, is *apropos,* and we quote:

"Generally speaking, uncommunicated threats are not admissible in homicide cases. See Stansbury, North Carolina Evidence, Sec. 162, p. 342. But there are exceptions to the rule which must be considered in the light of the facts of the particular case. Such exceptions occur where the evidence has an explanatory bearing on the plea of self-defense. The statement of the rule in *S. v. Baldwin,* 155 N.C., 494, 495, 71 S.E., 212, is as specific as the nature of the case admits, and omitting matter not relevant to the present situation, is applicable here: 'It is now generally recognized that in trials for homicide uncommunicated threats are admissible . . . where they tend to throw light on the occurrence and aid the jury to a correct interpretation of the same, and there is testimony *ultra* sufficient to carry the case to the jury tending to show that the killing may have been done from a principle of self-preservation,' citing *Turpin's case,* 77 N.C., 473; *S. v. McIver,* 125 N.C., 645, 34 S.E., 439; Hornigan & Thompson Self-defense, 927; *Stokes' case,* 53 N.Y.; *Holler v. State,* Ind., 57; *Cornelius v. Commonwealth,* 54 Ky., 539."

Accord, *State v. Goode,* 249 N.C. 632, 107 S.E. 2d 70; 40 Am. Jur. 2d, Homicide, § 324, p. 593.

The testimony of the defendant was sufficient to carry the case to the jury tending to show that the killing may have been done in self-defense, and these uncommunicated threats would tend to throw light on the occurrence and aid the jury to a correct interpretation of the same. We think, under the circumstances of this case, the exclusion of this evidence was error.

We have not overlooked defendant's assignments of error to the charge of the court to the jury, some of which seem to have merit; but under the circumstances, we feel that no useful purpose could be served by discussing them.

New trial.

CAMPBELL and MORRIS, JJ., concur.