STATE OF NORTH CAROLINA v. HUBERT CHURCH

No. 7924SC469

(Filed 16 October 1979)

1. Homicide § 21.9— involuntary manslaughter—culpable negligence—sufficiency of evidence

　　A jury question was presented as to whether defendant acted in a culpably negligent manner and was thus guilty of involuntary manslaughter where the evidence tended to show that deceased struck defendant with a wrench while at defendant's home and defendant forced deceased to leave the home by use of a shotgun; deceased threatened to kill defendant and later returned with a bow and some arrows; while defendant was sitting on his

porch, deceased shot a steel-tipped arrow which grazed defendant's cheek and struck the door; defendant got the arrow and broke it; deceased put another arrow in his bow and pulled the string back; defendant picked up his shotgun and pulled the trigger without aiming; and the shot struck deceased.

**2. Homicide § 28.4— self-defense—instructions—right to stand ground on own premises**

Where evidence in a homicide case tended to show that defendant was attacked by deceased on his own premises and was without fault in bringing on the difficulty, the trial court erred in failing to instruct the jury on defendant's right to stand his ground without retreating.

APPEAL by defendant from *Howell, Judge*. Judgment entered 1 December 1978 in Superior Court, MADISON County. Heard in the Court of Appeals 26 September 1979.

Defendant was indicted for the murder of D. A. Keener. The State presented evidence that Keener and the defendant had been friends for many years. On the day of his death Keener went to defendant's home right after breakfast, and returned in the afternoon to the house where he was boarding. He "was mumbling something" as he passed by his landlady, Mrs. Caldwell. He walked back down the driveway toward defendant's house with a bow and arrows in his hand. Mrs. Caldwell looked up and saw defendant "bring a long gun up"; she heard it fire and saw Keener bleeding. Four arrows were found by Keener's body, and a fifth arrow, broken, was given to the police by defendant's niece Leona Thomas.

Defendant testified that on the morning of the killing he and Keener had been working on defendant's house and drinking a pint of liquor and a quart of wine. Keener went home after lunch, and when he returned he came into defendant's house without knocking and hit defendant over the head with a 6- or 8-inch adjustable wrench, knocking him to the floor. Defendant got his gun and "run him off," and Keener left saying, "Well, I'll kill you, you damn son of a bitch." Defendant "had not done or said anything out of the way to him." Keener went up to his house, got the bow and arrows, and came back down. Defendant and his niece were sitting on the porch, and Keener didn't say anything, just shot a steel-tipped arrow, which grazed defendant's cheek and hit the door. Defendant got the arrow and broke it. He told Keener to quit, that he wanted no trouble with him. Keener put another arrow in his bow and pulled back the string, and defendant picked

up his shotgun from where it was leaning against the wall and pulled the trigger without aiming. He did not bring the gun up to his shoulder and did not intend to hit Keener, but only to scare him away. Defendant thought Keener was going to shoot him with the arrow, since he had already shot one time.

Leona Thomas' testimony about the events was the same as defendant's. Henry Sharp, who was talking with Mrs. Caldwell just before the killing, testified that Keener said he was going down to see defendant, that he was gone about five minutes and came back up the road saying, "I'll kill the son of a bitch," and that he went into the Caldwell house and came back out with a bow and arrows in his hand. Keener also had a wrench sticking out of his pocket.

Defendant was found guilty of involuntary manslaughter and sentenced to 3-5 years. He appeals.

*Attorney General Edmisten, by Assistant Attorneys General Norma S. Harrell and Douglas Johnston, for the State.*

*Huff & Huff, by Joseph B. Huff and Stephen E. Huff, for defendant appellant.*

ARNOLD, Judge.

Defendant contends that the court erred in denying his motion to dismiss, made at the close of the State's evidence and renewed at the close of defendant's evidence as required by G.S. 15-173. The test on such a motion is whether sufficient evidence has been presented to support a finding by the jury that defendant committed an offense with which he is charged. *See State v. Hunt,* 289 N.C. 403, 222 S.E. 2d 234, *death sentence vacated* 429 U.S. 809, 97 S.Ct. 46, 50 L.Ed. 2d 69 (1976). In ruling on the motion the court must consider the evidence in the light most favorable to the State, and may consider the defendant's evidence only if it is favorable to the State or if it serves to explain the State's evidence without conflicting with it. *State v. Evans,* 279 N.C. 447, 183 S.E. 2d 540 (1971).

[1] To withstand defendant's motion, the State must have presented evidence of every essential element of the crime. *State v. Allred,* 279 N.C. 398, 183 S.E. 2d 553 (1971). Involuntary manslaughter is an unintentional killing without malice, resulting

---

---

from "(1) an unlawful act not amounting to a felony nor naturally dangerous to human life, or (2) a culpably negligent act or omission." *State v. Redfern*, 291 N.C. 319, 321, 230 S.E. 2d 152, 153 (1976). Considering all the evidence, in which there is essentially no conflict, we cannot say as a matter of law that defendant did not act in a culpably negligent manner. This is a question for the jury. There was no error in the denial of defendant's motion.

As the State points out, defendant's exceptions to the charge to the jury fail to comply with the requirements of Appellate Rule 10(b)(2). In the interest of justice, however, we have considered defendant's assignment of error number three, *cf. State v. Crews*, 284 N.C. 427, 201 S.E. 2d 840 (1974); *State v. Robinson*, 272 N.C. 271, 158 S.E. 2d 23 (1967), and we find that it has merit.

[2] When a person who is without fault in bringing on the difficulty is attacked upon his own premises, he has no duty to retreat before he can act in self-defense. *State v. Browning*, 28 N.C. App. 376, 221 S.E. 2d 375 (1976). And where there is evidence to this effect, it is reversible error for the court to fail to instruct the jury on the defendant's right to stand his ground. *Id.* Such is the case here. We need not discuss defendant's remaining assignments of error, as they are unlikely to occur at a

New trial.

Judges WEBB and WELLS concur.