STATE OF NORTH CAROLINA v. ETHEL BELL DAVIS

No. 827SC1056

(Filed 19 April 1983)

**Homicide § 28.4— no duty to retreat within own home—failure to instruct**

 The trial court in a homicide prosecution erred in failing to give defendant's requested instruction that a person who is attacked in his own home is under no duty to retreat and may use reasonable force in self-defense.

CERTIORARI to review *Bruce, Judge.* Judgment entered 22 February 1980 in EDGECOMBE County Superior Court. Heard in the Court of Appeals 18 March 1983.

Defendant was indicted and tried for the second degree murder of Robert Lee Hill.

The evidence for the State showed, in pertinent part, the following. The victim, Hill, called defendant on the telephone at approximately 1:00 p.m. and told defendant he was coming to visit her in a few minutes. Defendant and Daisy Williams waited a few minutes for Hill, but he did not arrive. At that point, defendant and Williams got in a car and went to look for Hill, with Williams driving. After some searching, they found Hill's car at the house of another woman. They blew the car horn and the woman came to the door. Defendant told her that if Robert Lee Hill was there, to tell him to stay there and that if "he puts a foot in [defendant's] yard she was gonna kill him." The women drove away. Daisy Williams testified that, after leaving, defendant reiterated that she would kill Hill if he came and that she had made similar statements on prior occasions.

Some time after 5:00 p.m., Hill went to defendant's house, waved to a friend in the yard, and entered the front door. Several witnesses were present. Hill was in a room alone. Defendant entered the room and shot Hill twice in the chest with a pistol from point blank range, killing him.

No one was present in the room at the time of the shooting, which occurred approximately one or two minutes after Hill arrived. Immediately prior to the shooting, several witnesses saw defendant with a pistol and argued with her about it, telling her to put it away. Defendant refused. Defendant's granddaughter shut a door. Defendant pulled the granddaughter out of the way by the collar and went through the door to the room where Hill was. Defendant's daughter ran out of the house and exclaimed, "Mamma gonna shoot Mr. Robert Lee." The shots were fired a few seconds after defendant entered the room where Hill was. Shortly thereafter, Daisy Williams arrived and saw Hill's body on the floor. Defendant told Williams, "I told you I was going to kill him."

The State introduced into evidence a statement made by defendant to a deputy sheriff shortly after the shooting. Defendant

told the deputy, in part, the following. Defendant admitted that she shot Hill. Prior to the killing, Hill had called defendant on the telephone and told her that he had a gun, a "monkey," in his pocket and was coming to shoot defendant with it, that defendant had better get her "monkey." Hill arrived and asked defendant if she remembered his warning. He told her to go get her "monkey" because he had his. She went and got her pistol and put it inside her skirt. She returned to the room where Hill was standing. Hill told her, "God knows, I ain't lying this time, I am going to kill you." Hill grabbed and shoved defendant. As he put his hand in his right pocket, defendant pulled her pistol from her skirt and fired at him. He continued coming toward her and she fired again and Hill fell to the floor.

The investigating deputy testified that he found a loaded pistol in Hill's right inside coat pocket, the barrel of the pistol sticking out of the pocket. When the deputy arrived, there was a crowd of people at the house and, because defendant stated that she was afraid that Hill's brother would come and kill her, the crowd was ordered to disperse. Defendant was taken to the sheriff's department. She cooperated and readily waived her rights and made the statement.

Defendant testified in her own behalf and admitted shooting Robert Lee Hill. In her testimony, defendant reiterated the story, essentially the same as she had told the deputy. She further testified that on numerous prior occasions she and her family had been the victims of Hill's abuses, threats and assaults. Defendant knew that Hill carried a pistol in his right pocket. Defendant testified that she was afraid of Hill and believed he would kill her. The jury found defendant guilty of second degree murder and the trial judge entered judgment on the jury's verdict, imposing an active sentence of imprisonment. No appeal was taken. This Court allowed defendant's petition for Writ of Certiorari.

*Attorney General Rufus L. Edmisten, by Associate Attorney William N. Farrell, for the State.*

*Bridgers, Horton & Simmons, by Edward B. Simmons, for defendant.*

WELLS, Judge.

In her brief, defendant contends that she is entitled to a new trial because the trial judge denied her request for an instruction to the jury that a person who is attacked in his own home is under no duty to retreat and may use reasonable force in self-defense.

The law of self-defense takes on an additional dimension if the accused is threatened or assaulted by the victim on the accused's own premises. Our Supreme Court, in *State v. Johnson*, 261 N.C. 727, 136 S.E. 2d 84 (1964), stated the rule as follows:

> Ordinarily, when a person who is free from fault in bringing on a difficulty, is attacked in his own home or on his own premises, the law imposes on him no duty to retreat before he can justify his fighting in self defense, regardless of the character of the assault, but is entitled to stand his ground, to repel force with force, and to increase his force, so as not only to resist, but also to overcome the assault and secure himself from all harm. (Cites omitted.)

*See also State v. McCombs*, 297 N.C. 151, 253 S.E. 2d 906 (1979); *State v. Walker*, 236 N.C. 742, 73 S.E. 2d 868 (1953); *State v. Church*, 43 N.C. App. 365, 258 S.E. 2d 812 (1979).

In *State v. Poplin*, 238 N.C. 728, 78 S.E. 2d 777 (1953), the evidence favorable to the defendant showed that the defendant and the deceased got into an altercation in the defendant's kitchen; that the defendant ordered the deceased from the house; that when the deceased did not leave, the defendant went to his bedroom and got a pistol and shot and killed the deceased who continued to approach him with an upraised chair. The Supreme Court held that the defendant was entitled to a new trial because the trial judge had failed to charge upon the defendant's right to defend himself in his own home, to defend his home from attack and to eject trespassers from his home, as substantive features of the case arising upon the evidence.

In *State v. McLaurin*, 46 N.C. App. 746, 266 S.E. 2d 406 (1980), the State's evidence showed that the defendant lured the deceased to his house, announced his intentions to kill her and shot her in cold blood. The defendant testified that he knew the victim to carry a gun; that the victim told him that she was going

to give him "six little bullets" and reached into her coat pocket; and that he shot her twice, believing that she was going to kill him. This Court awarded the defendant a new trial because the trial judge failed to charge that there was no duty on the part of the defendant to retreat within his own home.

For other cases on a defendant's right to have a jury instructed on his rights while in his home to stand his ground and repel assaults, *see* 6 Strong's N.C. Index 3d, Homicide § 28.4.

In the present case, defendant's only defense was her theory of self-defense. The trial judge erred in failing to give defendant's requested instruction on her right to stand her ground. For the trial judge's failure to instruct thoroughly on the law raised by the evidence, defendant must have a new trial. *See* G.S. 15A-1232.

We do not address defendant's other assignments of error as such questions are not likely to present themselves on retrial.

New trial.

Judges HILL and JOHNSON concur.