STATE v. MARVIN CUTLER.

(Filed 20 September, 1967.)

**1. Criminal Law § 104—**

Upon motion for nonsuit, all the evidence admitted, whether competent or incompetent, must be considered in the light most favorable to the State, giving it the benefit of every reasonable inference to be drawn therefrom, and so much of the defendant's evidence as is favorable to the State must also be considered.

**2. Criminal Law § 106—**

Motion for nonsuit is properly allowed when the evidence is insufficient to raise more than a suspicion or conjecture that the crime charged in the indictment or warrant has been committed or that the defendant committed it.

**3. Same—**

The test of the sufficiency of circumstantial evidence to withstand nonsuit is whether a reasonable inference of defendant's guilt may be drawn from the evidence; if so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is guilty.

**4. Homicide § 20— Circumstantial evidence held insufficient to be submitted to the jury in this homicide prosecution.**

The State's evidence tended to show that the deceased was found in his home, with a stab wound in his heart, that the body was lying in a pool of blood and that a quantity of blood was found throughout the house and inside defendant's pickup truck parked nearby. The evidence further tended to show that on the morning after the crime defendant had blood on his clothes and on the blade of his knife, and that a hair was stuck in the blood on the knife, which hair was similar to the hair on deceased's chest. An expert testified that the blood near deceased's body and the blood inside the truck came from different persons, and that he could not positively identify the hair as one from the body of the deceased. *Held:* The evidence discloses that defendant had opportunity to commit the offense charged, but is insufficient to be submitted to the jury on the question of defendant's guilt.

APPEAL by defendant from *Bundy, J.,* at the January 1967 Criminal Session of BEAUFORT.

The defendant, indicted for the murder of Joe Bierman, was convicted of manslaughter and sentenced to a term of six years in the State Prison. He assigns as error the admission, over his objection, of certain evidence offered by the State and the denial of his motion for judgment of nonsuit at the close of the State's evidence, the defendant having offered none.

The State relied entirely upon circumstantial evidence. Taking all of it, including that admitted over objection, to be true, and considering it in the light most favorable to the State, it tends to show the following:

On 24 November 1966, at about 1 p.m., a visitor to the house in which Joe Bierman lived alone found his body lying, face down, upon the kitchen floor in a pool of blood. He had been dead about five hours. The cause of death was a stab wound into the heart. This wound was one and one-half inches in length and, when opened, three-quarters of an inch in width upon the surface of the chest. There was also a straight, clean wound upon the outside of the right forearm two inches in length to the depth of about one-quarter of

an inch, beginning three and a half inches above the wrist bone and running across and up the arm. A shotgun lay across the legs of the body but there was no evidence to indicate that it had been fired.

There was blood all over the floor of the kitchen in puddles and droplets. A pool of blood was also found beside a bed in the room adjoining the kitchen and splotches of blood were found upon a broken plate lying on the floor in the doorway connecting the two rooms. There was also blood on the steps leading to the front door of the house, upon which blood someone had stepped. There was also blood, in substantial quantity, upon the right side of the seat and the steering wheel of a red Ford pickup truck, parked near the Bierman house in the lane leading from the highway to the house, which truck was similar in appearance to one owned by the defendant.

A sample of the blood taken from the pool beneath the body of the deceased and a sample of the blood taken from the seat of the pickup truck were examined by an expert in that field. In his opinion both samples were human blood but came from different persons, that taken from the pool beneath the body being Type AB and that taken from the seat of the pickup truck being Type B.

Between 6 a.m. and 7 a.m. on 24 November 1966, the defendant, driving his red Ford pickup truck, went to the home of his brother-in-law, approximately three-quarters of a mile from the Bierman home. After a brief inquiry as to the whereabouts of his mother, the defendant drove away.

At 7:10 a.m. on the day in question, an old model red pickup truck was seen, by a neighbor, driving up the lane to the Bierman home. It stopped in front of the house. A truck of similar appearance was there when this witness returned at 4:30 p.m.

At about 9:30 a.m. on the day in question, the defendant went to the home of his uncle, Charlie Cutler, 500 yards from the Bierman home, and asked to be carried home, stating that he wanted to see his mother. The defendant had been drinking and was "bloody as a hog." He was able to walk but was staggering. Charlie Cutler washed off the blood caked upon the defendant's face and observed a gash upon the defendant's head which then began to bleed again. This gash was about two inches long and appeared to be to the skull bone in depth. The defendant at that time told Charlie Cutler, "Joe had killed himself," nothing else being said about "Joe," and "Joe" not being otherwise identified. Charlie Cutler then got the defendant's sister to carry the defendant to his home. Thereafter, about 10:15 a.m., the defendant was carried to the hospital in the automobile of a neighbor. En route to the hospital, he stated to this neighbor that he "would rather get a pint of liquor and go back and

see how Joe was than go to the doctor." He was nevertheless carried to the hospital, where the cut on his head was dressed and sewed up. He was then taken back to his home.

At approximately 4 p.m. on the day in question, the sheriff, after his preliminary investigation at the Bierman home, went to the defendant's home and found the defendant, apparently asleep. There was blood on his clothing. A closed pocket knife lay upon the bureau beside the bed. The entire blade was bloody. A hair was stuck to the blade. The blood on the clothing, the blood on the knife, the hair on the knife and hair taken from the right arm and left chest of the deceased were examined by the above mentioned expert. The blood on the knife blade was human blood, but the expert could not determine whether it belonged to the same group as that taken from the pool beneath the body of the deceased. The blood on the clothing of the defendant was of Type B, that is, it was of the same type as that taken from the seat of the truck in the Bierman lane. The hair taken from the knife blade was of a different type from the hair taken from the arm of the deceased. It was similar to the hair taken from the chest of the deceased, but the expert was not able to say that the hair on the knife and the hair taken from the chest of the deceased came from the same person, methods for making that determination not being available to him.

On the afternoon of the day in question, the defendant stated to the sheriff and his deputy that he had left his pickup truck in Joe Bierman's yard some time that morning because he could not get it started.

On the following day, an insecticide can, covered with blood, was discovered in the third room of the Bierman house.

*Attorney General Bruton and Deputy Attorney General McGalliard for the State.*

*LeRoy Scott for defendant appellant.*

LAKE, J. Upon a motion for judgment as of nonsuit in a criminal action, the evidence must be considered by the court in the light most favorable to the State, all contradictions and discrepancies therein must be resolved in its favor and it must be given the benefit of every reasonable inference to be drawn from the evidence. *State v. Bruton,* 264 N.C. 488, 142 S.E. 2d 169; *State v. Thompson,* 256 N.C. 593, 124 S.E. 2d 728; *State v. Bass,* 255 N.C. 42, 120 S.E. 2d 580. All of the evidence actually admitted, whether competent or incompetent, including that offered by the defendant, if any, which is favorable to the State, must be taken into account and so considered by the court in ruling upon the motion. *State*

*v. Walker,* 266 N.C. 269, 145 S.E. 2d 833; *State v. Virgil,* 263 N.C. 73, 138 S.E. 2d 777.

The question for the Court is whether, when all of the evidence is so considered, there is substantial evidence to support a finding both that an offense charged in the bill of indictment, or warrant if it be a case tried upon a warrant, has been committed and that the defendant committed it. *State v. Bass,* 253 N.C. 318, 116 S.E. 2d 772. If, when the evidence is so considered, it is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion for nonsuit should be allowed. *State v. Guffey,* 252 N.C. 60, 112 S.E. 2. 734. This is true even though the suspicion so aroused by the evidence is strong. *State v. Chavis,* 270 N.C. 306, 154 S.E. 2d 340.

The test of the sufficiency of the evidence to withstand such a motion is the same whether the evidence is circumstantial, direct, or both. *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431. "When the motion for nonsuit calls into question the sufficiency of circumstantial evidence, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty." *State v. Rowland,* 263 N.C. 353, 139 S.E. 2d 661. "If the motion is overruled, it becomes the court's duty to charge the jury that in making up its verdict it must return a verdict of not guilty unless the evidence points unerringly to the defendant's guilt and excludes every other reasonable hypothesis." *State v. Stephens, supra.* This, however, is not the test to be applied by the Court in determining whether the evidence is sufficient to warrant the submission of the case to the jury.

These controlling principles of law are more easily stated than applied to the evidence in a particular case. Of necessity, the application must be made to the evidence introduced in each case, as a whole, and adjudications in prior cases are rarely controlling as the evidence differs from case to case.

Applying these governing principles to the evidence introduced in the present case, we reach the conclusion that it is sufficient to raise a strong suspicion of the defendant's guilt but not sufficient to remove that issue from the realm of suspicion and conjecture. It may reasonably be inferred that the defendant was at the home of the deceased when the deceased came to his death, or shortly thereafter. However, it is not enough to defeat the motion for nonsuit that the evidence establishes that the defendant had an opportunity to commit the crime charged. *State v. Holland,* 234 N.C. 354, 67 S.E. 2d 272.

The evidence of the State is not sufficient to show any blood from the body of the deceased upon the person, clothing, knife or vehicle of the defendant. The hair found upon the bloody knife blade was, in the opinion of the expert offered by the State, similar to hair taken from the chest of the deceased, but the expert was not able to state that in his opinion it came from the body of the deceased. There is no evidence as to whether this hair was similar to the defendant's own hair. The State's evidence does not disclose that any blood found upon any object in the residence of the deceased came from the defendant. There is no evidence to show ill will between the deceased and the defendant or any other motive for the defendant to assault or kill the deceased. Neither the court nor the jury may draw any inference from the election by the defendant not to offer evidence in his own behalf.

The motion for judgment as of nonsuit should have been allowed. This being true, it is unnecessary to consider the assignments of error relating to the admission of evidence offered by the State.

Reversed.