STATE OF NORTH CAROLINA v. MARTHA KIRBY
No. 6926SC49

(Filed 30 April 1969)

### 1. Criminal Law § 104—    nonsuit — consideration of evidence

Upon motion for nonsuit in a criminal action, the evidence must be considered in the light most favorable to the State, all contradictions and dis-

crepancies therein must be resolved in its favor and it must be given the benefit of every reasonable inference to be drawn from the evidence.

**2. Criminal Law § 104— nonsuit — consideration of defendant's evidence**

Upon motion for nonsuit, all of the evidence admitted, including that offered by defendant which is favorable to the State, must be considered by the court.

**3. Criminal Law § 106— nonsuit — sufficiency of evidence**

The test of the sufficiency of evidence to withstand motion for nonsuit is the same whether the evidence is circumstantial, direct or both.

**4. Homicide § 21— sufficiency of evidence**

In this prosecution for second degree murder, defendant's motion for nonsuit is properly denied where the State's evidence tends to show that the fatally wounded body of deceased was found lying in a doorway to his home, that deceased had been shot five times, that defendant, the wife of deceased, was found lying on a bed in the home with a pistol approximately three to five inches from her hand, and that bullets found in deceased's body were fired from the pistol found near defendant.

**5. Homicide §§ 14, 21— nonsuit — evidence of self-defense**

In a homicide prosecution, strong evidence of self-defense does not entitle defendant to a nonsuit since defendant has the burden of proving self-defense to the satisfaction of the jury.

**6. Criminal Law § 5; Homicide § 28— instructions — mental capacity**

In this prosecution for second degree murder, the court did not err in instructing the jury that the fact that the episode produced a shock or trauma which created a mental block so that defendant did not subsequently recall what had happened would not entitle her to an acquittal, the test of mental responsibility being the capacity of defendant to distinguish between right and wrong at the time of and in respect to the matter under investigation.

**7. Criminal Law § 132— motion to set aside verdict as contrary to weight of evidence**

A motion to set aside the verdict as being contrary to the weight of the evidence is addressed to the discretion of the trial court, and the court's denial of such a motion is not reviewable on appeal in the absence of manifest abuse of discretion.

APPEAL by defendant from *Ervin, J.,* at the 8 July 1968 Regular Schedule "B" Session of MECKLENBURG Superior Court.

By indictment proper in form, defendant was charged with second-degree murder of her husband, Howard Eugene Kirby, on 26 February 1968. The jury returned a verdict of guilty of manslaughter

and from an active prison sentence of not less than two nor more than five years imposed by the court, defendant appealed.

*Attorney General Robert Morgan and Assistant Attorney General Millard R. Rich, Jr., for the State.*

*Henry E. Fisher for defendant appellant.*

BRITT, J.

In the first assignment of error brought forward and argued in her brief, defendant contends that the trial court erred in overruling her motion for nonsuit interposed at the close of the State's evidence and renewed at the close of all the evidence.

[1-3] It is firmly established in this jurisdiction that upon a motion for judgment as of nonsuit in a criminal action, the evidence must be considered by the court in the light most favorable to the State, all contradictions and discrepancies therein must be resolved in its favor and it must be given the benefit of every reasonable inference to be drawn from the evidence. *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679; *State v. Bruton,* 264 N.C. 488, 142 S.E. 2d 169. All of the evidence admitted, including that offered by the defendant, if any, which is favorable to the State, must be taken into account and so considered by the court in ruling upon the motion. *State v. Cutler, supra; State v. Walker,* 266 N.C. 269, 145 S.E. 2d 833. The test of the sufficiency of evidence to withstand such a motion is the same whether the evidence is circumstantial, direct, or both. *State v. Cutler, supra; State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431.

As was said by Lake, J., in *State v. Cutler, supra,* "[t]hese controlling principles of law are more easily stated than applied to the evidence in a particular case. Of necessity, the application must be made to the evidence introduced in each case, as a whole, and adjudications in prior cases are rarely controlling as the evidence differs from case to case."

[4] Briefly summarized, the State's evidence in the instant case tended to show the following:

On 26 February 1968, the defendant, her deceased husband, and their ten-year-old son occupied a comfortable home at 1322 Marble Street in the City of Charlotte. Defendant and Howard Kirby, the deceased, were married in 1957 and prior to his death deceased was a long-haul driver for Central Motor Lines. Between 2:00 and 3:00 p.m. on Monday, 26 February 1968, John Eagle, a cab driver, pursuant to a call, went to 1322 Marble Street and drove into the

driveway. He saw the front louver door of the home eased open and could see the head of a man, later identified as Howard Kirby, lying in the doorway waving his hands. Mr. Eagle asked Kirby what he wanted and he said, "Call me an ambulance, I've been shot." The driver returned to his cab, contacted his dispatcher and requested that he call an ambulance and the police. The cab driver remained near the house until the ambulance arrived, then went with the ambulance attendants to Howard Kirby, but he appeared to be dead at that time. The police then arrived and proceeded to call the county medical examiner who, shortly thereafter, arrived and declared Howard Kirby dead. Very soon after the cab driver entered the house with the ambulance attendants, he heard a female voice in another room say, "Please don't hurt me any more." The police arrived at the home at approximately five minutes after 3:00 and concluded at that time that Howard Kirby was dead. His body, clad only in a T-shirt and socks, was lying face down in the front doorway. The police proceeded to search the house which contained four or five rooms, including two bedrooms. In the front bedroom they found the defendant, dressed only in a pajama top, lying face down on the lower of two bunk beds; one of her hands extended over the bed and approximately three to five inches from her hand was a .25 caliber Colt automatic pistol. The police tried to arouse defendant by turning her over on her side and shaking her but were unable to do so. As the police turned her over and shook her, she said, "Don't hit me again. * * * Please quit hitting me." Defendant was later removed from the room and taken by ambulance to a hospital where she remained for approximately two weeks. The room in which defendant was found was her son's bedroom. The master bedroom, theretofore occupied by defendant and deceased, was completely disorganized; the bed was messed up, the telephone was on the floor with the receiver out of the cradle, and there were blood stains and an open pocket knife on the floor.

The Mecklenburg County medical examiner examined the body of deceased very soon after it was found by the police and later in the day he performed an autopsy. The examiner found that the decedent had five gunshot wounds caused by entry of bullets and three wounds caused by exit of bullets. Two bullets were removed from the body and the fatal shot entered the right upper abdomen, passed through the right chest and through the liver and right lung, causing hemorrhage resulting in death. The course of the fatal wound extended slightly upward and backward. It was stipulated and admitted that if a named FBI agent were present in court he would testify that in his opinion the two bullets removed from the

deceased's body and the three or four spent bullets that were found at the scene were all fired by one and the same gun, the Colt automatic found near defendant's hand.

The defendant introduced numerous witnesses who testified to her good character and reputation. She testified in her defense and gave testimony substantially as follows: The deceased was a good husband except when he was drinking and on those occasions he was violent and abusive. He began drinking on Saturday prior to 26 February and continued to drink at intervals throughout Sunday and Sunday evening. On Sunday evening he became quite abusive and after defendant put her son to bed in his room, she went to bed, sharing the same bed with deceased. He proceeded to curse and abuse her, struck her in the face and kicked her off the bed several times. Defendant begged her husband to stop his cursing and abusing her and she found it necessary on two occasions to go to their son's room and calm him. After her husband continued abusing her, she went to the kitchen and took several sleeping pills in addition to a tranquilizer which she had taken. She then told her husband that she had taken a sufficient quantity of sleeping pills to make her sleep in spite of his abuses. She testified that she did not know anything else that happened until Monday night when she awoke in a hospital in Charlotte. She testified that the Colt automatic pistol was hers, that she kept it under the mattress in the bedroom, that she kept it for protection inasmuch as her husband's work kept him away from home for extended periods of time, but that she had never fired the pistol in her life that she remembered.

The ten-year-old son testified that on Sunday night he heard his father tell his mother that he was going to kill her. He further testified that on Monday morning he got up at ten minutes before 8:00 and went to school, that he saw his mother in her bedroom and said goodbye to her and that he thought she said goodbye to him.

[4, 5]   Applying pertinent principles of law, we hold that the evidence was sufficient to survive the motions for nonsuit and that the trial court did not commit error in overruling said motions. The strong evidence of self-defense did not entitle the defendant to a nonsuit as the burden was on the defendant to prove self-defense to the satisfaction of the jury. *State v. Pennell,* 231 N.C. 651, 58 S.E. 2d 341; 4 Strong, N.C. Index 2d, Homicide, § 14, p. 211.

In her next assignment of error, defendant contends that the trial court erred when it charged the jury as follows:

"If you find that the defendant committed a criminal act and that at the time she committed this criminal act she realized

the nature and character of the act, and knew that the act was wrong, that is, that she understood the moral character of the act performed, then the court instructs you that the mere fact that the episode produced a shock or trauma which created a mental block so that she did not subsequently recall what had happened, this alone would not entitle her to an acquittal."

[6]     Immediately preceding the portion of the charge above-quoted, the trial court instructed the jury to the effect that if it found that the defendant at the time and place of the homicide was in a state of mind that rendered her incapable of comprehending the criminal character of her act, and that her incapacity was a result of an overdose or excessive use of a drug she had taken, then the jury should acquit the defendant and find her not guilty. Defendant's counsel strenuously argues that this client's lapse of memory rendered it difficult, if not impossible, for him to present a proper defense in this case. Although defense counsel's position can be appreciated, the fact remains that it is well-established law in this State that the test of mental responsibility is the capacity of defendant to distinguish between right and wrong *at the time of* and in respect to the matter under investigation. 2 Strong, N.C. Index 2d, Criminal Law, § 5, and cases therein cited. We hold that the challenged portion of the charge, particularly when considered contextually with other portions of the charge, was not error and the assignment of error relating thereto is overruled.

Finally, defendant assigns as error the failure of the court to set aside the verdict as being contrary to the greater weight of the evidence and for errors committed during the progress of the trial.

[7]     A motion to set aside the verdict as being contrary to the weight of the evidence is addressed to the discretion of the trial court, and its refusal to grant the motion is not reviewable on appeal in the absence of manifest abuse of discretion. *State v. McKinnon,* 223 N.C. 160, 25 S.E. 2d 606; *State v. Reddick,* 222 N.C. 520, 23 S.E. 2d 909. No abuse of discretion has been shown and we find no errors committed during the trial that would require setting the verdict aside. The assignment of error is overruled.

The record before us discloses that defendant received a fair trial, free from prejudicial error, and the sentence imposed was well within the limits provided by statute.

No error.

MALLARD, C.J., and PARKER, J., concur.