STATE OF NORTH CAROLINA v. JIMMY LEE WINGARD

No. 7026SC451

(Filed 16 December 1970)

**1. Mayhem § 2; Criminal Law § 42— malicious throwing of acid — admission of evidence — cup connected with the crime**

In a prosecution charging the defendant with maliciously throwing a corrosive acid or alkali in the face and eyes of the prosecuting witness with the intent to murder, maim, or disfigure the witness and inflicting serious injury not resulting in death, the admission of evidence relating to the plastic cup in which the acid was contained and to the chemical analysis of the contents of the cup, *held* proper, where (1) defendant offered no objection to the evidence when it was admitted and (2) the State sufficiently connected the liquid analyzed by the chemist with the liquid thrown by defendant. G.S. 14-30.1.

**2. Criminal Law § 162— waiver of objection to evidence**

Failure to object in apt time to evidence constitutes a waiver of objection unless the evidence is forbidden by statute or results from questions asked by the trial judge or a juror.

**3. Mayhem § 1— malicious throwing of acid — intent as ascertained from defendant's acts**

One who, without provocation, deliberately throws corrosive acid or alkali into the face and eyes of another, thereby causing serious injuries, is in no position to complain if a jury finds that he intended his act to produce the very result which it did produce.

**4. Criminal Law § 2—jury finding of intent — nature of evidence**

Juries must frequently ascertain intent from evidence as to a person's actions.

**5. Mayhem § 1— malicious throwing of acid — element of intent**

In a prosecution for maliciously throwing a corrosive acid or alkali, it is not necessary for the jury to find that the intent to mur-

der, maim, or disfigure was the sole or even the dominant motivation for defendant's actions.

**6. Mayhem § 2— malicious throwing of acid — sufficiency of evidence**

In a prosecution charging the defendant with maliciously throwing a corrosive acid or alkali in the face and eyes of the prosecuting witness with the intent to murder, maim, or disfigure the witness, and inflicting serious injury not resulting in death, the State's evidence was sufficient to support a finding of guilt on every essential element of the crime, including intent, where there was testimony that (1) the defendant entered the store in which the prosecuting witness was working; (2) the defendant was carrying a glass or cup filled with some liquid; (3) the defendant brought several items to the counter and told the prosecuting witness to add them up; (4) the defendant said, "Here, do you want this?" and threw the liquid in the witness' face; (5) the prosecuting witness received injuries to his face, neck, and arms, and lost the vision of his right eye; and (6) the liquid remaining in the cup was analyzed as ammonia hydroxide, an alkali.

**7. Criminal Law § 115; Mayhem § 2— malicious throwing of acid — instruction on lesser included offense**

In a prosecution for the malicious throwing of corrosive acid or alkali, any error by the trial court in charging on the lesser included offense of assault could not have been prejudicial to the defendant. G.S. 14-30.1

APPEAL by defendant from *Anglin, J.,* 6 April 1970 Session of MECKLENBURG Superior Court.

Defendant was indicted for maliciously throwing a corrosive acid or alkali in the face and eyes of one James Rayford Wolfe with intent to murder, maim, or disfigure the said Wolfe, inflicting serious injury not resulting in death, a violation of G.S. 14-30.1. He pleaded not guilty.

The State's evidence showed the following events: On the morning of 17 January 1970 defendant and a girl companion came into the Little General Store where Wolfe was employed. Defendant, who had previously been a customer and was known to Wolfe, was carrying in his hand a glass of liquid which Wolfe thought to be a soft drink. Defendant and the girl said that they might want a money order and wandered around the store looking at different items. They then left, saying they would be back. They returned at approximately 2:15 in the afternoon. Defendant was still carrying the glass or cup filled with some liquid. He placed this on the counter. The girl asked Wolfe for a $35.00 money order. While Wolfe was making out the money order, defendant walked around the store and picked up several

items of merchandise. When most of the people had gone out of the store, defendant brought the items of merchandise he had picked up to the counter and asked Wolfe to add them up. Wolfe did so and turned to tell defendant the total. Defendant said, "Here, do you want this?" and threw the liquid in Wolfe's face. Wolfe testified: "The liquid felt like fire thrown in my face. It was all over my face and eyes and I could not see." Wolfe struggled with defendant because, so Wolfe testified, "I figured he was trying to come to the register." Defendant hit Wolfe on the head four or five times with a garbage can lid. Then defendant and the girl fled. Wolfe received injuries to his face, neck, and arms, and lost the vision of his right eye. He received medical and surgical treatment for these injuries and was in the hospital for eight days.

The investigating police officer testified that he found a plastic glass or cup on the counter, which contained three or four ounces of a yellowish or cloudy-looking liquid. He poured this liquid into a baby food jar, which he sealed and took to the police crime laboratory. There he delivered it to a graduate chemist and microbiologist. The chemist testified he analyzed the contents of the baby food container given him at the police department and determined that the substance was ammonia hydroxide. The chemist testified that ammonia hydroxide is an alkali which, when placed on the human body, in effect, breaks down at the bonds between the chemical components of the tissue and dissolves or liquifies it.

Defendant did not testify and offered no evidence. The jury found defendant guilty as charged and the court entered judgment sentencing defendant to prison for a term of ten years. Defendant appealed.

*Attorney General Robert Morgan by Trial Attorney James E. Magner, Jr., for the State.*

*Hasty & Kratt by John H. Hasty for defendant appellant.*

PARKER, Judge.

[1, 2] Appellant's first four assignments of error are directed to the admission of evidence relative to the plastic glass or cup and the chemical analysis of its contents. The record reveals and appellant admits that no objection was made at the time this evidence was introduced. It did not result from questions

asked by the trial judge or a juror, nor was it forbidden by statute. Therefore, even if it had been incompetent, failure to object to this evidence in apt time waived any objection so that its admission will not be reviewed on appeal. *State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534. In our view, however, the evidence was entirely competent and admissible. The State did sufficiently connect the liquid analyzed by the chemist with the liquid which defendant threw in Wolfe's face to permit the jury to find they were the same substance.

[3-6] Appellant next assigns as error the denial of his motions for nonsuit, contending that the State's evidence failed to show the specific intent to "murder, maim or disfigure," an essential element of the crime described in G.S. 14-30.1. We find no merit in this contention. One who, without provocation, deliberately throws corrosive acid or alkali into the face and eyes of another, thereby causing serious injuries, is in no position to complain if a jury finds that he intended his act to produce the very result which it did produce. Juries must frequently ascertain intent from evidence as to a person's actions. Nor was it necessary for the jury to find that the intent to murder, maim, or disfigure was the sole or even the dominant motivation for defendant's actions. The possibility he may have also harbored an intent to rob would not preclude a jury finding he intended to maim his victim in the process. Intent and motivation are often complex; as an element of crime they need not be neatly compartmentalized. There was in this case substantial evidence from which the jury could legitimately find defendant guilty of every essential element of the crime with which he was charged, and there was no error in overruling his motions for nonsuit.

[7] Appellant's assignments of error directed to the court's charge to the jury are also without merit. Indeed, the charge given in this case could well serve as a model of what a clear, brief, and yet complete and accurate instruction to the jury should be. The court accurately stated the evidence to the extent necessary to explain the application of the law thereto and properly declared and explained the law arising on the evidence given in the case. The jury was instructed in clear and understandable language as to what facts they were required to find in order to return their verdict. Under the evidence in this case the court did not commit error in charging on the lesser included offense of assault, and even if this had been error, it would have been prejudicial to the State, not to the defendant,

who has no cause to complain. *State v. Rogers,* 273 N.C. 208, 159 S.E. 2d 525.

In the trial and judgment we find

No error.

Chief Judge MALLARD and Judge HEDRICK concur.