STATE OF NORTH CAROLINA v. JACK SELLERS

No. 49

(Filed 29 January 1976)

1. Assault and Battery § 14; Property § 4— damage to person and property by use of dynamite — sufficiency of evidence

In a prosecution for malicious damage to person and property by means of dynamite and conspiracy to injure a person by means of dynamite, evidence was sufficient to be submitted to the jury where it tended to show that defendant and his coconspirators learned that their victim was an undercover narcotics agent for the SBI, they questioned another informer at gunpoint about his and the victim's roles as undercover narcotics agents, the informer observed defendant handling dynamite and clips in the house of one of the coconspirators, later that night defendant compelled the informer to identify the victim, the informer, while he was being held at gunpoint by a coconspirator, observed defendant and a coconspirator carry a bag of dynamite to the victim's car, while they were beside the car the hood was raised and lowered two times, when defendant came away from the victim's car he stated, "it would happen in the morning," and on the following morning the dynamite exploded and the car was damaged and the victim seriously injured when he started the car.

2. Criminal Law § 116— failure of defendant to testify — wording of jury instruction

The trial court did not err in instructing the jury that the fact that defendant did not take the stand "should not be considered by

you against him" rather than "*shall* not be considered by you against him."

APPEAL by defendant pursuant to G.S. 7A-27(a) from *Rousseau, J.,* at the 10 March 1975 Session of RANDOLPH County Superior Court from judgment of life imprisonment. A motion *nunc pro tunc* to bypass the Court of Appeals was allowed as to the other charges.

Defendant was tried on separate bills of indictment charging him with wilful and malicious damage by means of dynamite to an automobile occupied by Albert Stout, Jr. in violation of G.S. 14-49.1; with wilful and malicious injury to Albert Stout, Jr. by means of dynamite in violation of G.S. 14-49; and with conspiring with Jeanette Martha Grier, Jule Hutton, Otis Blackmon, and Wilbur James Sanders to wilfully and maliciously injure Albert Stout, Jr. by the use of dynamite. The case was transferred from Rowan County on defendant's motion for a change of venue. The bills of indictment were consolidated for trial and defendant entered pleas of not guilty to all charges. It would appear that the case of Jeanette Martha Grier, an alleged co-conspirator, was consolidated for trial with the instant case, but this is not before us at this time.

The evidence for the State tended to show the following: Albert Stout, Jr. was assigned to the Charlotte area as an undercover agent for the State Bureau of Investigation. His work consisted of making narcotic purchases from known sellers of drugs and aiding in their prosecution. On 9 September 1974 Stout went to the home of Jule Hutton, Jr. in Charlotte on three occasions between the hours of 3:00 p.m. and 10:00 p.m. but failed to see him.

Agent Stout returned to his residence in Salisbury, North Carolina, about midnight and parked his brown 1974 Torina automobile, owned by the North Carolina State Bureau of Investigation, in a parking area near his apartment. He locked it and went into his apartment. The next morning a little after 8:00 a.m. he unlocked his automobile, inserted the key in the ignition, and turned the switch. He then felt pain, saw a flash of light, and heard a blast or a loud noise. Without losing consciousness, he observed that his right leg and foot were blown off by the explosion and his right hand was so mangled that he could not use it. His right eye was destroyed and various bones were broken.

Prior to 9 September 1974 Stout had testified against Jeanette Grier and Otis James Blackmon in connection with heroin purchases he had made from them. The charges against Blackmon were pending on 9 September 1974. Stout had never met or testified against the defendant.

Jule Hutton, Jr. testified that he was an informer for the Charlotte Police Department and the SBI and that he was supposed to meet Agent Stout on 9 September 1974. On this date Hutton went to the home of Jeanette Grier looking for a girl known as Sissy Gail. When Hutton arrived at Jeanette Grier's house about noon he found Jeanette Grier, Wilbur James (Chuck) Sanders, Otis Blackmon, and the defendant. Blackmon immediately asked Hutton if he knew Albert Stout. When Hutton said he did not, Blackmon grabbed him and slammed him against the wall. After Mrs. Grier inquired about the license plate of Stout's car and Hutton again refused to cooperate, Blackmon and defendant pushed Hutton down on the couch. The defendant then gave Sanders a .38 caliber pistol which Sanders held on Hutton.

Subsequently, Hutton saw Blackmon come from the back door followed by someone else whom he did not know. The person with Blackmon had a brown paper bag with a Winn Dixie sign stamped on it. When the man who had the bag left, he did not take it with him.

Later, the defendant told Chuck Sanders to bring Hutton into the area of the dining room table. Hutton saw the brown bag on the table. The defendant put on gloves, opened the bag, took out a cellophane bag which contained about five sticks of dynamite, some wire with clips on the end of it, and some other silver objects. After examining it, the defendant told Blackmon that everything was there. The package was folded up and replaced in the brown paper bag with the Winn Dixie sign on it. The defendant, Blackmon, and Grier then had a ten minute meeting while Sanders held Hutton under surveillance. Blackmon told the defendant that he would return later and left with the bag and its contents.

Later that night the defendant, armed with the same .38 caliber pistol, escorted Hutton to Hutton's house. Shortly thereafter they heard a knock on the door, peeped through the window, and saw Agent Stout knocking on the door. Defendant asked if that was "the undercover agent," and Hutton replied

affirmatively. Hutton and the defendant did not answer the knock on the door and returned to the Grier house soon after Stout left.

On the way back to the Grier house Hutton admitted he had been an informer since 1963, and the defendant told Hutton that he ought to be dead. When they arrived at the Grier house, the defendant told Chuck Sanders that he had seen the undercover agent. Shortly thereafter, the defendant left the Grier residence, but, before leaving, he gave Sanders the .38 caliber pistol so he could guard Hutton. When the defendant returned about midnight he told Sanders to get ready. The defendant, accompanied by Sanders and Hutton, then drove the Grier Buick automobile to Salisbury where they stopped for a few minutes on a side street. Blackmon soon joined them carrying a Winn Dixie brown paper bag. The defendant drove them to an apartment complex and stopped behind a brown Torino identified by Hutton as Agent Stout's vehicle.

Sanders remained in the car guarding Hutton with the pistol while the defendant and Blackmon got out of the car with Blackmon carrying the Winn Dixie brown paper bag. After the defendant and Blackmon had been beside the Torina automobile for five or six minutes, the hood was raised. It was again raised and lowered while Blackmon was out of sight for about five minutes. After the defendant and Blackmon came back to the Buick, Blackmon said "It would happen in the morning." Blackmon was returned to his vehicle, but, before they separated, defendant asked Blackmon what to do with Hutton and Blackmon replied, "Kill the MF and leave him out beside the highway." The defendant and Sanders returned to Charlotte with Hutton.

A forensic chemist who investigated the scene testified that an alligator clip was attached to one of the posts on the starter of Stout's car. Hutton identified this clip as one of two such clips he had seen in the Winn Dixie bag. A second forensic chemist testified that the extensive damage to the Torina automobile was caused by dynamite.

The State rested and the defendant made a motion to dismiss all charges against him, which was denied.

The defendant did not testify, but offered evidence tending to show an alibi through Jack Sharpshire, who testified that he saw the defendant in Charlotte in a gambling game on

Monday, 9 September 1974 but did not recall positively whether it was Sunday or Monday evening. Another witness, Milton Murray, testified that the defendant was in a poker game in Charlotte at the same place between 11:00 p.m. and 12 midnight on 9 September 1974 and between 1:30 and 2:30 a.m. on 10 September 1974.

Also called as a witness was Caroline Walker (Sissy Gail). She indicated she was serving a three to five year prison sentence for selling and delivering heroin; that she had used heroin with Hutton three or four times a week from the last of July until the first of September; and that Hutton was a heroin addict.

At the conclusion of all the evidence the defendant renewed his motion for dismissal as to all charges, which was overruled.

Other evidence relative to this decision will be set out in the opinion.

The jury returned verdicts of guilty as to all charges. The defendant was sentenced to life imprisonment for the wilful and malicious damage to occupied personal property by means of explosives and to fifteen years to begin at the expiration of the previous sentence, upon the charges of maliciously injuring Albert Stout, Jr. by the use of explosives and conspiring to maliciously injure Albert Stout, Jr. by the use of explosives. Defendant appealed directly to the Supreme Court from the judgment imposing life imprisonment, and we allowed his motion *nunc pro tunc* to bypass the Court of Appeals on the charges of wilful and malicious injury to Albert Stout, Jr., and conspiring to maliciously injure Albert Stout, Jr. by the use of explosives.

The facts in this case are substantially the same as those outlined and discussed in *State v. Sanders,* 288 N.C. 285, 218 S.E. 2d 352 (1975).

*Attorney General Rufus L. Edmisten by Assistant Attorney General James E. Magner, Jr. for the State.*

*Charles V. Bell for defendant appellant.*

COPELAND, Justice.

[1]  The defendant contends that the trial court erred in overruling his motion to dismiss all the charges made at the conclusion of all the evidence.

"It is elementary that, for the purpose of ruling upon a motion for judgment as of nonsuit, the evidence for the State is taken to be true, every reasonable inference favorable to the State is to be drawn therefrom and discrepancies therein are to be disregarded." *State v. Rankin,* 284 N.C. 219, 223, 200 S.E. 2d 182, 185 (1973). *Accord, State v. Sanders, supra; State v. Felton,* 283 N.C. 368, 196 S.E. 2d 239 (1973) ; *State v. Spencer,* 281 N.C. 121, 187 S.E. 2d 779 (1972) ; *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967).

The State's evidence disclosed that Jeanette Martha Grier, Jule Hutton, Otis Blackmon, Wilbur James Sanders, and the defendant had discovered that Albert Stout, Jr. was an undercover narcotics agent for the SBI. He had testified against Grier and Blackmon, and charges were still pending against Blackmon on 9 September 1974. On that date the defendant, Blackmon, Grier and Sanders interrogated Hutton about his and Stout's roles as undercover narcotics agents. After an unknown man brought a brown bag with a Winn Dixie sign on it to the Grier house, an identical bag containing dynamite was opened and examined by the defendant. He informed Blackmon that everything was there and then had a ten minute meeting with Blackmon and Grier while Sanders held Hutton under surveillance with a gun. Later that day the defendant compelled Hutton to ride with him to Hutton's house and to identify Stout. In this way the defendant was able to learn that Stout was meeting Hutton despite Hutton's previous denials of any personal knowledge of Stout. Also, the defendant compelled Hutton to admit that he was an informer.

Sometime after midnight the defendant, Sanders and Hutton met Blackmon in Salisbury on a side street and drove to Stout's car carrying a bag identical to the one in which the dynamite had been placed earlier that day. While the defendant and Blackmon had this same bag in their possession and were beside the car of Stout for about ten minutes, the hood was raised and lowered twice. In view of the above circumstances and subsequent events, the statement of the defendant upon returning from Stout's car that "it would happen in the morning" indicated that dynamite had been planted at this time so as to detonate in the morning. The statement of Blackmon thereafter directing defendant to kill Hutton further indicated the criminal nature of their activity at that time. Around midnight Stout had parked his car for the evening of 9 September 1974,

State v. Sellers

and on the morning of 10 September 1974 a little after 8:00 a.m. he was severely injured and his car was damaged when he attempted to start his car. Expert testimony indicated that a dynamite charge had been set to the ignition switch to his car and was the cause of the injuries and damage.

In light of the foregoing legal principles, the evidence for the State was sufficient to permit the jury to find that the defendant assisted in the planning, drove some of the conspirators to the scene, and actively participated with Blackmon in putting the dynamite in the Stout automobile. This assignment of error is without merit and overruled.

[2]   The defendant also contends that the trial judge erred in the manner in which he charged the jury on the failure of the defendant to testify in his own behalf.

Counsel for the defendant in his brief says, among other things, that the court should have used the word "shall" rather than the word "should" in the following instruction to the jury:

" . . . The fact that the defendants have not taken the stand and testified in his or her own behalf *should* not be considered by you against him or she [sic], or to his or her prejudice at any stage, for the defendant was exercising a right which the law gives to him." (Emphasis supplied.)

This is without merit. An examination of the jury instruction in *State v. Sanders, supra,* discloses that the same judge made almost an identical charge to that given in the instant case. The same assignment of error was made in *Sanders,* and our Court held that the instruction was proper. On the authority of *Sanders* this assignment is overruled.

Defendant makes no further contentions, but because of the seriousness of the offenses, we have carefully examined the entire record and it reveals that the defendant has received a fair trial, free from prejudicial error, and we find

No error.