STATE OF NORTH CAROLINA v. ROBERT LEE BASS

No. 7811SC21

(Filed 6 June 1978)

1. **Homicide § 21.2— voluntary manslaughter—wound inflicted by defendant—sufficiency of evidence**

    The State's evidence was sufficient for the jury in a voluntary manslaughter prosecution where it tended to show that, immediately before the victim was shot, the victim left defendant's service station without paying for the gasoline his companion had pumped into the car; a witness saw defendant fire a pistol in the direction of the car in which the victim was riding and heard defendant admit shooting at the "fellows [who] stole some gas"; and another witness saw the car between the service station and the first stop sign when the shots were fired.

**2. Homicide § 30.3— voluntary manslaughter—submission of involuntary manslaughter**

Evidence in a voluntary manslaughter prosecution that defendant fired shots toward the car in which the victim was riding and struck and killed the victim was sufficient to support the court's charge on the lesser included offense of involuntary manslaughter, since the evidence would support a finding that defendant was not actually aiming his shots at any individual and did not intentionally shoot the victim, and that his shooting of the victim resulted from culpable negligence.

**3. Criminal Law § 112.4— charge on circumstantial evidence—beyond a reasonable doubt**

It was not necessary for the court; when instructing on circumstantial evidence, to state that such evidence must prove the defendant's guilt beyond a reasonable doubt where the court in other portions of the charge fully instructed the jury that defendant could be convicted only if the State proved his guilt beyond a reasonable doubt.

APPEAL by defendant from *Rouse, Judge.* Judgment entered 8 September 1977 in Superior Court, HARNETT County. Heard in the Court of Appeals 3 May 1978.

Defendant was tried on his plea of not guilty to an indictment charging him with involuntary manslaughter in connection with the death of Hugh Sanders, which occurred on 9 April 1977.

At trial, the State presented first the testimony of Joe Proceno, who testified that on the date of Sanders's death, he and Sanders, along with another friend, Arthur Copson, were driving through North Carolina on their way to their homes in Delaware. Traveling on Interstate Highway 95, Proceno was driving his Buick automobile, and Sanders was sitting in the passenger's seat in the front of the car while Copson slept in the back seat. Sometime between 7:00 a.m. and 8:00 a.m., they stopped at the Robbie Ann Service Station to purchase gasoline. After observing only one man sitting in the service station, Proceno proceeded to pump gasoline into his automobile. Proceno got back in the car to get money, but when no one came out to take the money, Proceno drove away without paying. Before they got to a stop sign, Proceno heard a shot as the glass shattered on Sanders's side of the car. Sanders slumped over onto Proceno's lap, and Proceno heard more shots. They got back onto the interstate highway and traveled to the next exit before stopping to call an ambulance.

Copson testified that he awoke as the car pulled out of the service station and shortly thereafter heard a shot, that the glass on the passenger's side shattered, and that Sanders slumped over with a bullet hole in the right side of his head.

Thomas Sessoms, testifying for the State, stated that on the morning of 9 April he was at a restaurant adjacent to the Robbie Ann Service Station. As he was leaving the restaurant, he heard a shot and drove toward the service station where he heard another shot. He then saw defendant firing a third shot with a pistol. Defendant was pointing the pistol toward some automobiles located near the entrance ramp for the interstate highway, but Sessoms was unsure exactly which automobile was the target of the shots. Sessoms approached defendant and "asked him what was wrong. He said 'Them fellows stole some gas from him' he said 'he shot at them.'"

Another witness for the State, Odell Robinson, testified that on 9 April he went to the Robbie Ann Service Station to work for defendant. A few seconds after arriving at the station, he heard shots which were fired by defendant with a pistol. Robinson did not know where defendant was aiming the shots. Robinson testified:

> I heard Mr. Bass say "Hey" and that was all. I heard two shots fired. At the time I heard the shots the particular car was between the station and the first stop sign.

A pathologist, stipulated by defendant to be an expert, testified that he performed an autopsy on Sanders and that in his opinion Sanders died because of a missile wound on the right side of his head.

The State rested, and defendant presented the testimony of a deputy sheriff who had talked to Proceno and Copson on the day of the shooting. The deputy sheriff testified that the initial story Proceno and Copson told him was different from the story they presented in testifying for the State. Proceno also failed to identify defendant at a lineup. However, Proceno and Copson told the deputy later that same day that the shooting occurred after they had taken four dollars worth of gas without paying. Defendant also presented a number of character witnesses.

The jury found defendant guilty of involuntary manslaughter. From judgment imposing a prison sentence, defendant appealed.

*Attorney General Edmisten by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General Alan S. Hirsch for the State.*

*Stewart and Hayes by D. K. Stewart for defendant appellant.*

PARKER, Judge.

[1]  Defendant's first assignment of error is directed to the trial court's denial of his motions for nonsuit. Citing *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967), he contends that there was insufficient evidence that he shot the deceased and that the evidence shows, at most, no more than a mere opportunity to commit the offense. We disagree. Admittedly, no witness testified that he observed defendant fire the particular shot which was shown to have struck Sanders and caused his death. However, there was evidence that immediately before the shooting occurred, the victim left defendant's service station without paying for the gasoline his friend had pumped into the car. A witness testified that he saw defendant fire the pistol in the direction of the car in which Sanders was riding, and this witness also testified that defendant admitted shooting at the " 'fellows [who] stole some gas.' " Another witness testified that the car was between the service station and the first stop sign when the shots were fired. This evidence is clearly sufficient to support a jury verdict finding that a crime occurred and that it was committed by defendant. Therefore, this assignment of error is overruled.

[2]  Defendant was charged with voluntary manslaughter. By his second assignment of error he contends that the trial judge erred in submitting the charge of involuntary manslaughter to the jury because there was no evidence of involuntary manslaughter. He argues that the State's theory at trial was that defendant intentionally shot the deceased and that there was no evidence that defendant was culpably negligent. The evidence at trial showed that the victim was shot and that defendant had fired a pistol in the victim's direction. This evidence certainly supports an inference that the shooting of the victim was intentional. However, intent can seldom be proved with objective certainty, *see State v.*

*Bell,* 285 N.C. 746, 208 S.E. 2d 506 (1974); *State v. Wingard,* 10 N.C. App. 101, 177 S.E. 2d 765 (1970), and this evidence would also support a finding that defendant was not actually aiming his shots at any individual. Such a finding would amount to the culpable negligence required to support a charge of involuntary manslaughter. *See State v. Neal,* 248 N.C. 544, 103 S.E. 2d 722 (1958). Moreover, error, if any occurred, in submitting the lesser included offense of involuntary manslaughter was favorable to defendant, and he is without standing to challenge the verdict. *State v. Vestal,* 283 N.C. 249, 195 S.E. 2d 297 (1973); *State v. Chambers,* 21 N.C. App. 450, 204 S.E. 2d 560 (1974).

[3] By his third assignment of error defendant contends that the court committed error in its charge "as it relates to circumstantial evidence." This assignment of error is based on defendant's exception No. 4 which singles out the following portion of the charge:

> Now, members of the jury, the State in this case relies in part upon what is known as circumstantial evidence. Now, circumstantial evidence is recognized as accepted proof in a court of law. However, you must find the defendant not guilty unless all of the circumstances considered together exclude every reasonable possibility of innocence and points conclusively to guilt.

In his brief, defendant concedes that "the trial judge in this case stated the rule correctly as far as he went." His contention is that "the judge erred in the instruction by virtue of the fact that he failed to instruct the jury that the circumstantial evidence must prove the defendant's guilt beyond a reasonable doubt," and he cites *State v. Lowther,* 265 N.C. 315, 144 S.E. 2d 64 (1965) for the proposition that when the State relies on circumstantial evidence for a conviction, the jury must be satisfied beyond a reasonable doubt of the defendant's guilt before it can return a verdict of guilty. In our opinion, the portion of the court's charge which is the subject of defendant's exception No. 4 makes this abundantly clear. Moreover, it is elementary that in every criminal case, no matter what type of evidence the State relies upon, whether it be direct, or circumstantial, or both, the jury must be satisfied beyond a reasonable doubt of the defendant's guilt before it can return a verdict of guilty. In the present case at the beginning of

the charge the court correctly and fully instructed on this point when it defined reasonable doubt and instructed the jury that defendant could be convicted only if the State proved his guilt beyond a reasonable doubt. Again, in its mandate the court correctly instructed on this point. It was not necessary, as defendant contends, for the court to repeat the same instruction, using the words "beyond a reasonable doubt," when it instructed the jury concerning circumstantial evidence. Defendant's third assignment of error is overruled.

We have carefully examined all of defendant's remaining assignments of error and find no prejudicial error.

No error.

Judges HEDRICK and MITCHELL concur.